Schock, Appellant, *v.* Penn Township Mutual
Fire Insurance Association of Lancaster Co.

Argued November 12, 1941.

Before KELLER, P. J., CUNNINGHAM,
BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY,
JJ.

*B. M. Zimmerman,* of *Zimmerman, Myers & Kready,* for appellant.

*Chas. W. Eaby,* for appellee.

OPINION BY RHODES, J., February 28, 1942:

This action in assumpsit was brought to recover $1,000 alleged to be due plaintiff from defendant on a policy of fire insurance. Defendant's point for binding instructions for plaintiff in the sum of $550.76, with interest, was affirmed by the trial judge, and the jury returned a verdict accordingly. Plaintiff's motion for judgment n.o.v. in the sum declared was overruled, and judgment was entered on the verdict. Plaintiff has appealed.

Plaintiff in his statement of claim alleged, inter alia, that on January 16, 1938, for the consideration named, defendant executed and delivered to plaintiff a policy of insurance, No. 12,959, as a renewal of policy No. 8,170, which insured his buildings described therein to an amount not exceeding $1,000; that on September 3, 1938, the buildings were totally destroyed by fire; that policy No. 12,959 contained a "reduced rate contribution clause,"[1] which was not in the previous policy; that defendant, at the time of issuing policy No. 12,959 as a renewal of policy No. 8,170,[2] did not advise plain-

---

[1] This clause, commonly called an 80 per cent co-insurance clause, provides: "In consideration of the reduced rate and (or) form under which this policy is written, it is expressly stipulated and made a condition of this contract that in the event of loss this company shall be liable for no greater proportion thereof than the amount hereby insured bears to eighty per cent (80%) of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total insurance thereon."

[2] Policy No. 8,170 contained a "reduced rate average clause" which provided: "No co-insurance clause either expressed or implied shall be attached to or form a part of this policy."

tiff that the policy contained this provision. Defendant in its affidavit of defense admitted, inter alia, that it executed and delivered policy No. 12,959 to plaintiff on January 16, 1938, but averred that that policy was the only contract between plaintiff and defendant.

The averments in the statement of claim which were admitted in the affidavit of defense were offered in evidence at the trial. It was also admitted that the market value of plaintiff's property, which was destroyed by fire on September 3, 1938, was $43,121.75; that the amount of insurance in force on that date was $19,000; that under the 80 per cent co-insurance clause plaintiff should have carried insurance in the amount of $34,-497.50; that if the 80 per cent co-insurance clause was applicable defendant's liability under policy No. 12,959 would be $550.76; and that if plaintiff's contention was correct he would be entitled to recover $1,000 with interest. The trial judge directed the jury to find for plaintiff in the amount of $550.76, with interest from November 24, 1938, or a total of $617.94.

Defendant offered no evidence.

On February 16, 1928, defendant issued to plaintiff its standard fire insurance policy No. 8,170; this was for the term of ten years. It did not contain a "reduced rate contribution clause," which phrase is used as the equivalent of an 80 per cent co-insurance clause. Policy No. 12,959, which was executed and delivered to plaintiff on January 16, 1938, was also for a term of ten years, and did contain the reduced rate contribution clause, or 80 per cent co-insurance clause. The policies were for the same amount and covered the same property. Both policies were identified by plaintiff and admitted in evidence. Policy No. 12,959 was offered and received without objection. It had noted thereon, in pencil, "renewal of 8170."

Plaintiff testified that neither defendant company nor any representative of it ever notified him that a change

had been made in the new policy from the one originally issued to him on February 16, 1928 (No. 8,170); that he had never examined the new policy until after the fire on September 3, 1938, to determine whether it was the same as the old policy. The general manager of defendant company testified, as on cross-examination, that the new policy was issued and sent to plaintiff to take the place of policy No. 8,170; that he did not remember whether or not he informed plaintiff that the new policy was issued as a renewal of the old policy.

We think the jury should have been instructed to find that policy No. 12,959 was a renewal of policy No. 8,170, and that it was for them to accept or reject the oral testimony of plaintiff. If the testimony of plaintiff was believed, the verdict should have been for plaintiff for the full amount claimed. The delivery of the policy as a renewal, in the absence of notice or explanation that the terms of the policy had been altered, contemplated the same terms and conditions as the existing insurance. See *Hay v. Star Fire Ins. Co.*, 77 N. Y. 235, 33 Am. Rep. 607, 608; 36 Words and Phrases, Permanent Edition, 894. A renewal of a policy of fire insurance is, in effect, a new contract of insurance, and, unless otherwise expressed, on the same terms and conditions as the original policy. *Hartford Fire Ins. Co. v. Walsh*, 54 Ill. 164, 5 Am. Rep. 115, 116; *Bickford v. Aetna Ins. Co.*, 101 Me. 124, 63 A. 552, 555; 29 Am. Jur., Insurance, §258, p. 247; 32 C. J. p. 1143, §251; 6 Couch on Insurance, §1363 et seq.

In *Overholt et ux. v. Reliance Insurance Co. of Philadelphia et al.*, 319 Pa. 340, at page 344, 179 A. 554, at page 556, our Supreme Court, in an opinion by Mr. Justice MAXEY, said: "When the defendant company inquired through its agent whether the policy was to be renewed, this was an offer to make a new contract. In the absence of circumstances to indicate that a different meaning was intended, this meant a contract chronologically 'new,' but in *form* and *substance*, identical with

the original; no other interpretation is reasonable and can be maintained. See *Burson v. Fire Assn.,* 136 Pa. 267, 20 A. 401. If the company intended in the new policy to alter the terms of this old one, it should have made its intentions evident." See, also, *Palmer et al. v. Hartford Fire Insurance Co.,* 54 Conn. 488, 9 A. 248; *Lewis v. Western Assurance Co.,* 175 Tenn. 37, 130 S. W. 2d 982.

The court below in its opinion distinguishes the facts in the Overholt case from those in the present case by pointing out that in the Overholt case the inquiry for renewal was made by the defendant's agent, and the insured then directed defendant to renew the policy, and that in the instant case there is no evidence indicating at whose request the new policy was issued. In view of the other facts in the case before us we deem this immaterial.

Failure of plaintiff to examine the new policy when it was delivered or to discover the added clause until after his loss would not defeat recovery, if his testimony as to the neglect of defendant to inform him of its intention to alter in the renewal policy the terms of the old was accepted as true by the jury. See *Hay v. Star Fire Insurance Co.,* supra; 29 Am. Jur., Insurance, §253, p. 244.

Judgment is reversed, and a venire facias de novo awarded.