## Hammonton Investment and Mortgage Company v. Empire Mutual Fire Insurance Company of Pennsylvania (et al., Appellant).

Argued November 21, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*I. Finkelstein,* for appellant.

*Arlin M. Adams,* with him *James M. Richardson,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, December 29, 1956:

This is an appeal from a final judgment entered by the court en banc which dismissed exceptions to the adjudication and findings of the trial judge, sitting without a jury.

Plaintiff is an automobile finance company. Defendant, Empire Mutual Fire Insurance Company of Pennsylvania, is a Pennsylvania casualty insurance company which issued a master insurance policy to plaintiff covering losses resulting from physical damage to automobiles financed by plaintiff. This policy was written on behalf of the insurance company by the additional defendant, Dealers Underwriters, Inc., of Pennsylvania, hereinafter called the broker, an insurance brokerage company. The insurance company did not reserve any right to pass on or reject any individual risks written by the broker pursuant to the master policy.

After the master policy had been in effect for approximately a year, the insurance company cancelled it as permitted by the terms of the policy. The plaintiff finance company instituted this suit in assumpsit against the insurance company claiming that as a result of the cancellation, there became due and owing to plaintiff the sum of $9,986.88 representing unearned

premiums plus interest thereon. The insurance company admitted liability to plaintiff in the amount claimed, but brought in the broker as an additional defendant averring that the broker was indebted to it in approximately the same amount and it was stipulated at the trial that any judgment obtained by the insurance company against the broker could be set off against the amount due by the insurance company to the plaintiff, therefore making the issue for determination the rights of the two defendants inter se.

The insurance company's claim against the broker is based on two items arising under a written agreement entered into between them governing the payment of commissions. First, the company claims $3,-051.56 plus interest, representing commissions previously paid the broker by the company on premiums unearned at the time the master policy was cancelled. The broker admits liability for this amount but denies liability for the interest thereon. Second, the insurance company claims $6,596.11 plus interest, representing a return of commissions computed under clause 3-(b) of the agreement. The broker contends that under clause 3-(b), it is liable for only $1,978.21 and also disputes liability for interest on the amount due on this item. The written agreement between the parties provides: "3. An advance on commission of 30% of the gross premium will be allowed by the Company. However, (a) You [the broker] agree to repay pro rata in cases of cancellation, either by the Company or the assured. (b) You [the broker] agree to repay commission in the event that loss ratio (earned premium to losses and loss adjustment expense incurred less subrogation and salvage actually received) exceeds 60% and the repayment will be the portion of the commission by which the said loss ratio exceeds

60%. Note: In the event that the final loss ratio exceeds 95% all advance commission shall be repaid.". The parties agreed that the loss ratio on the insurance written by the broker was 75.4%, that the net premiums (total premiums received minus 10% for company overhead, handling and processing claims) on the insurance written were $42,818.42, and that commissions in the amount of $12,845.52 (30% of $42,818.42) had been advanced by the insurance company to the broker.

The court below adopted the insurance company's contention that under clause 3-(b) of the agreement, the refund should be computed by taking 15.4% (which is the percentage by which the loss ratio exceeded 60%) of the net premiums paid the company ($42,-818.42), while the broker maintains it should be determined on the commissions paid to it (15.4% of $12,845.52). We agree with the court below that the plain meaning of clause 3-(b) is that the refund should be based on the amount of net premiums paid the insurance company. Reading the clause as a whole, there is no doubt that its purpose was to protect the insurance company in the event that claims of policyholders were greater than anticipated, by requiring the broker to refund sufficient monies from its advance commission to cover the excess losses. As insurer, the company was obligated to pay losses to the policyholders. Since the broker received 30% of the premiums as its commission, the company had 70% of the premiums left out of which to pay losses to policyholders, and overhead for handling the insurance which was approximately 10%. Therefore if the losses exceeded 60%, the company would not have sufficient premiums to pay them and would have an out-of-pocket loss. The purpose of the provision under con-

sideration was to guard against such out-of-pocket losses by the company. This is made clear by the last sentence of the clause which provides that if the losses were extremely high, i.e., 95%, the broker was required to repay all advance commission. The company needed such protection since the broker had unrestricted authority to write policies on any automobiles financed by plaintiff.

Under clause 3-(b), the loss ratio is computed on the basis of total premiums paid and not merely on the amount of commission paid to the broker. To adopt the broker's contention would require us to ignore this fact, and also to read "portion" in the clause as meaning "proportion". Webster's New International Dictionary (2d ed.) defines portion as "an allotted part; a share . . . ," and proportion as "the relation of one portion to another or the whole . . .".

We also are of the opinion that the insurance company is entitled to interest on the amount due it from the broker. When the company cancelled plaintiff's policy, a debt arose for the repayment of unearned premiums and therefore the insurance company became obligated to pay plaintiff interest. By the same token, when the policy was cancelled, the broker became indebted to repay the commission on the unearned premiums, and also the debt for refund of commissions because of the excess losses.

Judgment affirmed.