563 A.2d 134

**Louis A. COPPOLA and Dolores M. Coppola, his Wife**

**v.**

**INSURANCE PLACEMENT FACILITY OF PENNSYLVANIA.**

**Appeal of Louis A. COPPOLA, Appellant.**

Superior Court of Pennsylvania.

Argued April 25, 1989.

Filed Aug. 1, 1989.

---

Michael C. George, Pittsburgh, for appellant.

Kathleen S. McAllister, Pittsburgh, for appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

JOHNSON, Judge.

■ Appellant Louis A. Coppola asks us to decide whether the cancellation of an insurance policy by an insured is effective on the date named by the insured in the cancellation notice, or whether the cancellation is effective only upon its receipt by the insurance company. Finding that

cancellation by an insured is effective on the date that the insured intends to cancel, if such intent is clear and precise, and not on the date that the insurance company receives notice of cancellation, we affirm the judgment on the verdict in favor of appellee Insurance Placement Facility (IPF).

The following facts are not in dispute and have been stipulated by the parties. Appellant and his wife owned property at 1803 East Carson Street in Pittsburgh. A policy issued by the Insurance Placement Facility of Pennsylvania with a term running from November 18, 1981 through November 18, 1982 insured this property against loss by fire in the amount of $160,000.00. The policy contained the following cancellation clause, which is required by 40 Pa.C.S. § 636:

> This policy shall be cancelled at any time at the request of the insured ... This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation ...

On March 25, 1982 Coppola met with his insurance broker and obtained new fire insurance from the North River Fire Insurance Company with a policy limit of $350,000.00. At the same time Coppola executed a Cancellation Request Policy Release form to cancel his old policy, the language of which read as follows:

> Release Statement. The undersigned agrees that: The above referenced policy is lost, destroyed or being retained. No claims of any type will be made against the Insurance Company under this policy for losses which occur after the date of cancellation shown above. Any premium adjustment will be made in accordance with the terms and conditions of the policy.

Louis Coppola signed the form and next to his signature affixed the date, March 25, 1982. The form was also hand-dated at the top in the appropriate blank which indicated that cancellation of the policy was to become effective on March 25, 1982 at 12:01 a.m. Coppola then sent this release to his own agent, the Andrew Rodgers Agency, on April 1, 1982, which in turn sent the form to the mortgagee

in possession of the original policy, Sentinel Savings and Loan. The mortgagee returned the cancellation form and the original policy to the Andrew Rodgers Agency. IPF received the policy and cancellation from the agency on April 13, 1982. Return premiums were subsequently sent to the Coppolas based on a March 25 cancellation date.

On April 11, 1982 the Coppola property sustained substantial fire damage for which they collected $350,000.00 from the new North River fire insurance policy.[1] Coppola also submitted the claim to IPF, believing that, regardless of when he intended to cancel the policy, the cancellation would not actually become effective until April 13, the date IPF received actual notice of the cancellation. The Insurance Placement Facility denied the claim because, in their view, the policy had been cancelled as of March 25. On April 7, 1983 the Coppolas filed a complaint against IPF alleging breach of contract for denial of the claim. A bench trial was held on November 13, 1986 before the Honorable Maurice Louik. The court found for IPF and against the Coppolas by Opinion and Order of December 10, 1987. Post-trial motions were filed and denied, and Louis Coppola appealed to this Court on August 12, 1988. Judgment on the verdict was entered on October 26, 1988.

The sole issue on appeal is:

Whether the trial court erred in determining, as a matter of law, that the policy in question was cancelled based solely upon the evidence of Appellant's intention to cancel, without the trial court making a factual determination as to when the insurance carrier received notice of Appellant's intention to cancel.

He asks us to resolve this issue of first impression by adopting a rule that cancellation of an insurance policy by

---

1. The court did not determine the amount of damage sustained by the Coppolas. It was not clear from the record whether the policies covered actual damage, market value or replacement costs. Testimony on the latter two were given, but there was no testimony on the dollar value of actual damage. The Coppolas do not argue to this Court that their damage exceeded the $350,000.00 which they received from their new policy.

an insured cannot be effective until the cancellation notice is actually received by the insurance company. Thus, Coppola asks us to award a new trial for the purpose of determining when notice of cancellation was effectively communicated to IPF. Although a few states, notably New York, adopt the view that actual receipt of notice is necessary to effect cancellation by the insured, *see Russ Togs, Inc. v. Fidelity–Phenix Insurance Co.*, 36 A.D.2d 706, 319 N.Y.S.2d 1 (1971), *aff'd*, 32 N.Y.2d 628, 342 N.Y.S.2d 658, 295 N.E.2d 386 (1973), we choose, rather, to follow basic contract principles, public policy, and leading federal caselaw and to reject Coppola's position.

▮▮▮ First, we recognize well-settled principles of insurance contract interpretation. While any ambiguities in an insurance contract will be resolved in favor of the insured, a court is required to give effect to clear and unambiguous language. *Standard Venetian Blind Co. v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). To effect the cancellation of a policy, the conditions incident to the right to do so must be strictly complied with. *Faramelli v. Potomac Ins. Co. of District of Columbia*, 346 Pa. 228, 29 A.2d 674 (1943). When the insurer pleads cancellation as an affirmative defense, the burden is on the insurer to prove effective cancellation prior to loss. *Moser Manufacturing Co. v. Donegal & Conoy Mutual Fire Ins. Co.*, 362 Pa. 110, 66 A.2d 581 (1949). The Pennsylvania Insurance Company Law, 40 P.S. § 636, sets forth a standard fire policy form. No other form may be used in this state. Nevertheless, an insurance policy is primarily a contract between the parties. That there is a standard, required form for this contract does not alter the policy's status as an expression of the intent of the parties, *Chauvin v. Superior Fire Insurance Co.*, 283 Pa. 397, 129 A. 326 (1925) but does aid our interpretation of the contract terms.

The Pennsylvania legislature requires that the following language be included in a fire insurance contract:

This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon

demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the insured a five days' written notice of cancellation ... [and by either refunding the excess premium or notifying the insured that he will receive the excess premium].

40 P.S. § 636. The contract at issue here contains this clause verbatim. This clause is not ambiguous; the legislature has clearly treated cancellation by an insurer and cancellation by an insured differently. The legislature specifically requires that, when the insurance company cancels, it must notify the insured of its intent to cancel at least five days before the cancellation is intended to become effective. Without this notice requirement, the insured would be left without insurance coverage without his knowledge. The undesirable ramifications of this possibility need no elaboration. The public policy reasons for the notice requirement are compelling, and our courts have strictly construed notice in this context to mean actual receipt of notice by the insured. *Campbell v. Royal Indemnity Company of New York*, 256 Pa.Super. 312, 389 A.2d 1139 (1978).

When the insured cancels, however, the legislature imposes no notice requirement; the public policy rationale stated above simply does not apply. The insured who cancels a policy obviously knows that he no longer has the policy. There is no need for a safeguard to guarantee that he receive affirmative evidence of this. The legislature focuses on a different interest. Recognizing that the insured is entitled to the unused portion of his premium, the statute requires that the insurer refund this unearned premium, the premium for the time period starting with the cancellation date chosen by the insured and ending with the end of the policy period. The unearned premium unequivocally becomes a debt of the insurance company to the former insured. *Hammonton Investment & Mortgage Company v. Empire Mutual Fire Insurance Co. Of Pennsylvania*, 387 Pa. 382, 128 A.2d 73 (1956). There is no question that,

for purposes of this refund, the cancellation date is the date that the insured himself designates as his intended cancellation date, even though paperwork may not be completed until long after this date.

Further, when the insured sends in a cancellation notice, he anticipates receiving his unearned premium refund for a period beginning on the date that he designates in the notice; the insurance contract specifically states that he will receive this refund. Therefore, he could not expect to reap the benefits of insurance coverage for a period for which his money will be refunded, a period for which he has not paid. The above contract language cannot be read as meaning that cancellation will become effective on the date the insured names for the purpose of reimbursement, but that it will become effective on the date of receipt by the company for the purpose of coverage.

Although this is an issue of first impression for the courts of this Commonwealth, Federal Court decisions offer guidance. First, these cases apply basic contract interpretation principles in order to ascertain how the insurance contract at issue is to be cancelled by the insured. Each of these cases interprets cancellation clause language identical to that in the present case. Most important, all these courts decide that the determinative factual consideration is whether the insured manifested a clear intent to cancel. None decide that receipt of notice by the insurance company is at all relevant to this determination.

Most instructive is *Del Boring Tire Service v. Federal Emergency Management Agency*, 496 F.Supp. 616 (W.D. Pa.1980). Del Boring Tire of Johnstown, Pennsylvania purchased flood insurance. However, before the policy became effective, the president of the company sent a notice of cancellation to the insurance agency on February 17, 1977 stating that they could not afford the insurance and that therefore they wished to cancel the policy. On March 8 the president of Del Boring completed the cancellation form and forwarded it to the insurer. The policy was sent to the insurance company on July 15. The cancellation was not

processed until October 27. On July 20, Del Boring sustained severe flood damage.

Del Boring submitted an insurance claim which the insurance company denied on the grounds that the policy had been cancelled. Del Boring contended that the actual refund of the paid premiums was a condition precedent to cancellation and that therefore they could not have intended to cancel until this condition had been met. The Honorable Donald E. Ziegler of the Federal District Court for the Western District of Pennsylvania resolved the issue by construing the insurance contract. The court included the cancellation notice as part of the contract. The cancellation notice contained the language "this policy may be cancelled at any time at the request of the insured." Concluding that the dispositive fact was whether the insured manifested a clear and precise intent to cancel, *Palardy v. Canadian Universal Ins. Co.*, 360 F.2d 1007 (2d Cir.1966), the court found that the letter of February 17, submission of the cancellation forms and return of the policy taken together manifested a clear intent to cancel the policy.

The court placed no significance on any particular date; in fact, the court did not even take note of the date that the insurance company *received* notice of cancellation. Receipt of notice by the insurance company was simply not relevant to the court's determination of whether the insured manifested an intent to cancel. The court concluded that Del Boring was not insured at the time of the flood.

In the present case, the trial court did not have to determine whether Coppola manifested a clear and precise intent to cancel as of March 25, 1982; Coppola stipulated this. As in *Del Boring*, the cancellation notice signed by Coppola constitutes part of the written agreement between the parties. The contract provided that the insured could cancel at any time, and Coppola completed a cancellation notice stating that he was cancelling his policy as of March 25, 1982. Therefore, Coppola is bound by the agreement he signed. *Standard Venetian Blind, supra.* The only distinction between *Del Boring* and the present case is imma-

terial in light of the fact that Coppola stipulated that he intended to cancel as of March 25. In *Del Boring,* the insured himself surrendered the policy, which the court considered as an additional manifestation of intent to cancel. In the present case, the mortgagee bank and not Coppola had possession of the insurance policy, and so it was the mortgagee bank that surrendered the policy in response to its receipt of Coppola's cancellation notice.

In *Commercial Standard Insurance Co. v. Farmers Alliance Mutual Insurance Co.,* 385 F.2d 826 (10th Cir. 1967), the court interpreted the identical cancellation language: "This policy shall be cancelled at any time at the request of the insured ..." The court wrote:

No action on the part of the insurance company was necessary to implement the request and consummate cancellation. If and when an insurance company receives an unequivocal request that a policy containing a provision such as [this one], be cancelled, *the policy is effectively cancelled as of the date requested;* neither the consent of, nor action by the insurer is necessary. *Palardy v. Canadian Universal Ins. Co.,* 360 F.2d 1007 (2d Cir.1966).

*Commercial Standard,* 385 F.2d at 830 (emphasis added). The Commercial Standard court then conducted its inquiry into whether various actions on the part of the insured constituted a clear and unequivocal intent to cancel as of the date named by the insured. Again, although receipt of the cancellation notice is necessary in order for the company to effectuate cancellation as of the date requested, the date of that receipt played no part in the court's analysis. The court held that the insured intended to cancel as of the date named in the notice, that the insurance company received that notice, and that therefore the policy was cancelled as of the date designated in the notice.

In *Palardy, supra,* the case relied upon by both the *Del Boring* and the *Commercial Standard* courts, the court interpreted a cancellation clause that read: "the time of the surrender or the effective date and hour of cancellation

stated in the notice shall become the end of the policy period." The cancellation notice sent by the insured stated that the policy is cancelled "upon receipt [by you] of this notice." Stressing the intent of the parties as manifested in the contract, the court held that the time of cancellation of the policy was the date the insurer received notice, *because the notice specifically named the time of cancellation of the policy as the time the notice was received. See also Graves v. Republic Insurance Company,* 516 F.Supp. 424 (E.D.Pa.1981), in which the court 1) applied the principles of contract interpretation and 2) the factual question to be resolved was whether the insured manifested an intent to cancel that was communicated to the insurer.

Aside from *Russ Togs, supra,* the New York case, the cases relied upon by Coppola from other jurisdictions do not support his position that a cancellation initiated by an insured should be effective only upon its receipt by the insurer. Rather, the courts in these cases employed the same analysis as did the federal courts in the above cases and interpreted the insurance contract terms in light of the facts of the case before them. In *Franklin Life Insurance Company v. Winney,* 469 S.W.2d 21 (Tex.Civ.App.1971), the contract of insurance specifically defined cancellation as a written request satisfactory to the company, filed at the company's home office in Springfield, Illinois. Therefore, the court held, actual receipt by the company was an agreed upon contract term and was necessary to effect cancellation.

In *Chauvin v. Highlands Insurance Company,* 361 So.2d 1255 (La.Ct.App.1978), the insurance contract stated that the insured may cancel the policy by mailing a written notice stating when cancellation was to become effective, but the insured sent an undated letter of cancellation. Because the letter was undated, the court assigned the cancellation date as the date that the notice was received by the insurance agency. And last, in *Pekin Insurance Company v. Bucy,* 101 Ill.App.3d 178, 56 Ill.Dec. 758, 427 N.E.2d 1304 (1981), the insured telephoned his agent and

requested cancellation, and the agent prepared and sent a cancellation notice on the same day. The court flatly rejected the insured's contention that the cancellation was effective only upon receipt by the company but rather looked to the insurance contract. The contract stated that the insured can cancel by mailing written notice stating when thereafter cancellation shall be effective. The court concluded that the cancellation could be made effective as of the date designated in the notice of cancellation.

We conclude that Coppola has presented us with no reason to adopt a different rule than that which we derive from application of contract principles, public policy and selected caselaw. Coppola's unequivocal intent to cancel as of March 25, 1982 is dispositive. Therefore, the insurance policy was cancelled as of March 25, 1982, and not on the date IPF received the notice. The Insurance Placement Facility properly denied Coppola's claim because the policy was cancelled as of March 25, 1982 and the damage was sustained on April 10. Hence, we affirm the judgment entered against Coppola and for IPF.

Judgment affirmed.