PENN TOWNSHIP, Appellant,

v.

AETNA CASUALTY & SURETY COMPA-
NY; Kemper National Insurance Com-
pany; Pennsylvania National Insurance
Company, Appellees,

v.

Patricia E. FISHER, Appellee.

PENN TOWNSHIP

v.

AETNA CASUALTY & SURETY COMPA-
NY; Lumbermens Mutual Casualty
Company; National Insurance Company

v.

Patricia E. FISHER.

Appeal of AETNA CASUALTY
& SURETY COMPANY.

PENN TOWNSHIP

v.

AETNA CASUALTY & SURETY COMPA-
NY; Kemper National Insurance Com-
pany; and Pennsylvania National Insur-
ance Company

v.

Patricia E. FISHER.

Appeal of PENNSYLVANIA NATIONAL
INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued May 20, 1998.

Filed Sept. 2, 1998.

Paul R. Wagner, Harrisburg, for Penn Tp.

Douglas B. Marcello, Harrisburg, for Aetna Cas. & Sur. Co.

Before CAVANAUGH, POPOVICH and BROSKY, JJ.

BROSKY, Judge.

These appeals are from the trial court's award of partial summary judgment in favor of appellee Aetna Casualty and Surety Company ("Aetna") on a fidelity bond. We affirm.

In 1985, appellant Penn Township, appellant in No. 1071,[1] engaged Patricia E. Fisher, a third party defendant below but not a party to this appeal, to act as treasurer to the Township. Ms. Fisher remained in this post until March 1990. During this period, appellee Aetna and others issued fidelity bonds of which Ms. Fisher was the named principal and appellant Township was the named obligee. The instruments which are the subject of this appeal were all issued by appellee, and were in effect for the periods January 6, 1986–January 5, 1987; January 5, 1987–January 4, 1988; January 4, 1988–January 2, 1989; January 2, 1989–January 1, 1990; and January 1, 1990–January 7, 1991.

In March 1990, a review of the appellant's financial records disclosed that a sum of approximately $400,000.00 had been embezzled. Almost immediately, Ms. Fisher became the focus of an ensuing criminal investigation. She was eventually convicted of larceny and sentenced to a term of incarceration in a state correctional institution.

On August 7, 1991, appellant brought the instant lawsuit in which it sought to recover from both Ms. Fisher and from the sureties on the various fidelity bonds naming Ms. Fisher as principal. After discovery was complete, the trial court entered partial summary judgment in favor of Aetna, finding that Aetna's maximum liability to appellant was limited by the unambiguous terms of its contract with the Township to $125,000.00 for the entire period during which Aetna was surety to Ms. Fisher. After summary judgment was entered, the case proceeded to trial against the other surety companies. Aetna did not participate in the trial because it did not challenge its liability in the amount of $125,000.00. Appellant filed a timely appeal, in which the sole issue presented for our review is whether the trial court erred in determining that Aetna's maximum liability to the Township was $125,000.00.

The trial court's decision has two components: the determination that the bond(s) contained no ambiguity and the determination that Aetna's interpretation of the noncumulation provision was correct. Both determinations were questions of law. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty*, 473 Pa. 576, 592–94, 375 A.2d 1267, 1275 (1977); *Novak v. Commonwealth*, 133 Pa.Cmwlth. 220, 575 A.2d 661, 663 (1990). Our scope of review is therefore plenary. *Borden v. Advent Ink, Co.*, 701 A.2d 255, 258 (Pa.Super.1997).

 Whether a bond imposes cumulative liability over several years of operation is a question that must be determined in light of the facts of each case and the provisions of the bond under which the claim arose. *Eddystone Fire Co. No. 1 v. Continental Ins. Cos.*, 284 Pa.Super. 260, 263–65, 425 A.2d 803, 805 (1981). A fidelity bond is a contract of insurance, and the rules of interpretation of insurance policies apply. *Id.* If a provision of an insurance policy is unambiguous, then the meaning of the term is determined exclusively by the words of the contract. *Pennsylvania Manufacturers' Ins. Co. v. Aetna Casualty and Surety Ins. Co.*, 426 Pa.

---

1. Our disposition of the Township's appeal in No. 1071 Harrisburg 1997 governs Aetna's cross-appeal docketed at No. 1072. We do not reach the merits of the appeal of Pennsylvania National Insurance Company, docketed at No. 1073, which has not been briefed. In its brief, the Township states that this dispute has been settled.

453, 457–59, 233 A.2d 548, 551 (1967). If the contract is ambiguous, then the fact finder may look to parol evidence to determine the contract's meaning. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200–04 and n. 5, 519 A.2d 385, 390–91 and n. 5 (1986). If examination of the parol evidence proves unfruitful, the court may then resort to rules of construction. *Id.* Our analysis therefore begins with the policy language.

Aetna provided coverage from January 1986 to January 1991, and a separate document setting forth Aetna's obligations to appellant was issued covering time periods corresponding approximately to each calendar year.[2] Each document is only one page long. The text of the bond covering the period January 6, 1986–January 5, 1987 reads in full:

04 S 100194546–100445 BCA

THE AETNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut
PUBLIC OFFICIAL BOND

KNOW ALL MEN BY THESE PRESENTS: That PATRICIA E. FISHER, Principal, and THE AETNA CASUALTY AND SURETY COMPANY, Surety, a corporation organized under the laws of the State of Connecticut, with its Home Office in the City of Hartford, in the said State, are held and firmly bound unto the TOWNSHIP OF PENN, Obligee, in the aggregate and non-cumulative sum of ONE HUNDRED TWENTY FIVE THOUSAND and 00/100 Dollars ($125,000), for the payment whereof to the Obligee the principal binds himself, his heirs, executors, administrators, and assigns, and the Surety binds itself, it [sic] successors and assigns, jointly and severally firmly by these presents.

WHEREAS, Principal has been duly appointed or elected to the office of TREA-

SURER for the term of office beginning on JANUARY 6, 1986 and ending on JANUARY 5, 1987.

NOW, THEREFORE, The condition of the foregoing obligation is such, that if the Principal shall during the said term faithfully perform such duties as may be imposed on him by law and shall honestly account for all money that may come into his own hands in his official capacity, then this obligation shall be void; otherwise it shall remain in force.

THE BOND IS FURTHER CONDITIONED that the liability of the Surety shall be fully terminated to future acts of the Principal thirty (30) days after receipt by the Obligee of the Surety's written notice of cancellation.

SIGNED, SEALED AND DATED 11/1/85

The instruments which set forth Aetna's obligations for the years 1987–1990 were identically worded to the 1986 bond except for Ms. Fisher's dates of office and the date of execution. The sum assured and the bond number in the top right hand corner remained unchanged.

■ The trial court found that the phrase "in the aggregate and non-cumulative sum" clearly and unambiguously limited Aetna's liability to $125,000.00 for the entire period for which Aetna provided coverage. The township agrees that the language is unambiguous. It contends, however, that the plain meaning of the first paragraph of the bond is that Aetna's liability is limited to $125,000.00 for the aggregate of all losses caused by any defalcations by Ms. Fisher during the period of office specified in the second paragraph. Thus appellant argues that it may recover a maximum of $125,000.00 for each of the bonded years 1986–1990.

It should be noted that there is very little Pennsylvania authority to aid us in interpret-

2. Aetna characterizes these documents as constituting a single bond with annual renewals, while appellant characterizes them as separate bonds. This issue is not dispositive because a renewal of a policy constitutes a separate and distinct contract for the period of time covered except where the provisions of the extension certificate show that the parties intended not to make a new

contract but to continue the original contract in force. *Schock v. Penn & Mut. Fire Ins. Ass'n*, 148 Pa.Super. 77, 80–81, 24 A.2d 741, 743 (1942); *Great American Indem. Co. v. State*, 229 S.W.2d 850, 853 (Tex.Ct.Civ.App.1950). For this reason we do not attach determinative weight to the fact that the bond number remained unchanged over time.

ing the bond in question. This much can be said: there is nothing inherently improbable about the interpretation placed on the limiting provision by either party or the trial court. The statute pursuant to which a bond was required neither requires nor prohibits a non-cumulative bond. 53 P.S. § 65702. Although some courts and commentators have questioned why a municipality would purchase a bond which limited its liability to a fixed sum over many years of operation, *Standard Accident Ins. Co. v. Collingdale State Bank*, 85 F.2d 375, 376 (3d Cir.1936); Note, Fidelity Bonds – Does it Pay to Renew Them? 27 Mich. L.Rev. 442 (1928), we have not found this argument persuasive when the policy clearly provides for non-cumulative liability. *Eddystone Fire Co.*, 284 Pa.Super. at 263–65, 265–67, 425 A.2d at 805, 806. As has been noted by other courts other factors, such as reduced premiums, elimination of the need to prove the precise date of a defalcation and a longer time period in which to bring a claim, can make a continuous, non-cumulative bond an attractive option. *A.B.S. Clothing Collection Inc. v. Home Ins. Co.*, 34 Cal.App.4th 1470, 1476–77, 41 Cal.Rptr.2d 166, 169 (1995); *Columbia Hospital for Women and Lying In Asylum v. United States Fidelity and Guaranty Co.*, 188 F.2d 654, 657 (D.C.Cir.1951).

On the other hand, as this case shows, there is nothing inherently improbable in the proposition that a municipality would want to have the policy limit available to it every year. This is especially true if, as amici suggest, it could have had such coverage at no extra cost merely by switching surety companies each year. Therefore a consensus has developed that a surety company may limit recovery to an aggregate sum over many years of coverage, but that the parties' intention to enter into a continuing bonding scheme must clearly appear. *A.B.S. Clothing Collection Inc. v. Home Ins. Co.*, 34 Cal.App. 4th 1470, 1478, 41 Cal.Rptr.2d 166, 170 (1995); *Scranton Volunteer Fire Co. v. United States Fidelity and Guaranty Co.*, 450 F.2d 775, 776 (2d Cir.1971); *Columbia Hospital*, 188 F.2d at 657, 659; *State ex rel.*

*Guste v. Aetna Cas. & Sur. Co.*, 417 So.2d 404, 406 (La.Ct.App.1982).

To determine the parties' intent here, we begin with the terms of the bond itself, and the threshold question that we must address is whether the contract is clear or ambiguous. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Hutchison*, 513 Pa. at 200– 02, 519 A.2d at 390. If a contract is reasonably susceptible of different constructions, is obscure in meaning through indefiniteness of expression or has a double meaning it is ambiguous. *Commonwealth Dept. of Transp. v. IA Construction Corp.*, 138 Pa. Cmwlth. 587, 588 A.2d 1327, 1330 (1991).

Our previous cases are of limited assistance on the issue of whether the particular provisions of Aetna's bond are sufficient to limit liability to $125,000.00 over the entire 1986–90 period. The state Supreme Court has never addressed the issue of cumulative liability under fidelity bonds, and we are aware of only two decisions of this court that have done so, those being *Eddystone Fire Co.* and *Bradley v. Fidelity & Casualty Co.*, 141 Pa.Super. 85, 14 A.2d 894 (1940). In both of those cases, the bonds at issue contained different language from that which we must construe in this appeal.[3]

The bond at issue in *Eddystone Fire Co.* contained the following provisions:

2. Regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, the Company's liability as to any Official covered hereunder shall not be cumulative from year to year or from period to period.

8. If this bond is issued as a continuation of a bond previously issued by the Company to the Assured, it is understood and agreed that the change from such prior bond to this bond may not impair the Assured's interests, this bond shall be construed to cover every loss within the period of the prior bond that would

3. We have also attempted to find cases from other jurisdictions in which language similar to that found in Aetna's bond has been interpreted.

We have found none. This appears to be a case of first impression.

have been recoverable under the prior bond had the prior bond continued in force.

PROVIDED:

\*　　\*　　\*

(d) That the aggregate liability of the Company on account of any loss or losses, whether sustained within the term of the prior bond or within the term of this bond, or partly within the term of each, shall in no event exceed the amount carried under this bond on the Official causing such loss or losses.

*Eddystone Fire Co.,* 284 Pa.Super. at 265–66, 425 A.2d at 805–06.

In addition, each bond contained a provision by which all liability under the bond for the previous year was canceled upon acceptance by the assured of the new bond. *Id.* at 265–67, 425 A.2d at 806.

In *Bradley,* the bond in question had no end date, and the limiting provision read as follows:

9. If this bond is issued as a continuation of a bond previously issued by the Company to the Employer ... the Company's aggregate liability under both bonds for all loss or losses shall in no event exceed the greatest amount for which the Company could be liable for such loss or losses under one of the said bonds.

*Bradley,* 141 Pa.Super. at 87–88, 14 A.2d at 895–96.

The bonds in both *Eddystone Fire Co.* and *Bradley* thus differed from the bonds at issue here in one critical aspect: not only did the bonds in those cases provide for aggregate and non-cumulative liability, they were explicit in identifying the losses that were to be aggregated. Here, however, the phrase "aggregate and non-cumulative" stands in isolation. Unlike the bonds in *Eddystone Fire Co.* and *Bradley,* Aetna's bond nowhere expressly refers to bonds issued in past or future years or to the consequences of extending the initial bond.

In our opinion, this factor distinguishes this case from *Eddystone Fire Co.* and *Bradley.* We are therefore constrained to find that the bond at issue here is ambiguous because there is no express reference or clear implication in the bond as to what losses are to be aggregated for the purpose of limiting recovery. The bond therefore constitutes a case of ambiguity through indefiniteness of expression: the reader must infer the meaning of the key clause with very little help from the text.

Here, it is not implausible for the language in question to mean that losses incurred over multiple years of coverage are to be aggregated, but neither is it implausible for the phrase to refer to all losses within the year of office referred to elsewhere in the bond. We cannot agree with appellant that this is the only possible meaning, because Ms. Fisher's term of office is set forth in a later paragraph from the term "aggregate and non-cumulative," and neither paragraph refers in any obvious way to the other. Furthermore, while as noted *supra* at n. 1, we do not give determinative weight to the fact that the same bond number appeared on every instrument, it is a factor that cannot be wholly ignored because it is evidence which suggests that there may have been in place a continuous bonding scheme. *See, Eddystone Fire Co.,* 284 Pa.Super. at 265–67, 425 A.2d at 806.

Finally, we note that a third interpretation is possible. The bond could plausibly be read to mean that the township may recover an aggregate sum of $125,000.00 from Aetna and Ms. Fisher as opposed to $125,000.00 from each.

Our conclusion is buttressed somewhat by the decisions of other courts which have interpreted non-cumulation clauses in fidelity bonds. In every case that we have located in which such a clause was found to be unambiguous, the clause stated that the surety would pay no more than the maximum amount stated in the bond no matter how many times the bond was renewed or for how many years it was in effect. *Eddystone Fire Co.; Bradley ; Columbia Hospital ; State ex rel. Guste ; Kavaney Realtor & Developer, Inc. v. Travelers Ins. Co.,* 501 N.W.2d 335 (N.D.1993); *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., Inc.,* 240 Va. 457, 397 S.E.2d 876 (1990); *Santa Fe General Office Credit Union v. Gilberts,* 12 Ill.App.3d 693,

299 N.E.2d 65 (Ill.App.1973); *Brulatour v. Aetna Cas. & Sur. Co.*, 80 F.2d 834 (2d Cir.1936); *United States Fidelity & Guaranty Co. v. Barber*, 70 F.2d 220 (6 th Cir.1934).. Bonds containing language far more precise than that found in that issued by Aetna to the Township have been found ambiguous in a number of cases. *A.B.S. Clothing Collection Inc.; Great American Indemnity Co. v. State*, 229 S.W.2d 850 (Tex.Ct.Civ.App.1950); *Penalosa Cooperative Exchange v. Farmland Mut. Ins. Co.*, 14 Kan.App.2d 321, 789 P.2d 1196 (1990); *City of Miami Springs v. Travelers Indem. Co.*, 365 So.2d 1030 (Fla. App.1979). Aetna's bond is the vaguest that we have encountered. Therefore we find that it was ambiguous.

■ Because we have found that there is an ambiguity in the contract, we must address whether the trial court's decision may be affirmed on the basis of the parol evidence. *Hutchison, supra.* Normally, this would be a matter for the finder of fact. *Hutchison*, 513 Pa. at 200–02, 202–04 n. 6, 519 A.2d at 390, 391 n. 6. In this case, however, the parol evidence consists of requests for admission, which were admitted for want of a reply, Pa. R.C.P. 4014(b). Aetna expressly relied on the requests for admission in its motion for summary judgment. Therefore, the question is suited for resolution by this court.

■ Request for Admission no. 7 states: During the time from when it was issued effective January 6, 1986 and during the renewals until January 1991, only one bond, bond 04 S 10094546–445 BCA, was issued by Aetna to Penn Township in the aggregate and non-cumulative sum of $125,000.00.
Request for admission no. 9 states:
It was the intent of Aetna, Patricia Fisher and Penn Township that from January 6, 1986 until January 1991, bond 04 S 10094546–445 BCA in the "aggregate and non-cumulative" sum of $125,000.00 was the sole bond available for claims of dishonesty on behalf of the Penn Township Treasurer.

■ Between them, these two requests for admission resolve the ambiguity. The Township has admitted that there was a single bond running from January 6, 1986 until January 1991 with a single aggregate and non-cumulative policy limit of $125,000.00 for the entire period, and that the Township as well as Aetna, intended this to be the case. In view of these admissions the Township cannot prevail because the construction placed on a contract by the parties determines that to be placed on it by this court. *Hutchison*, 513 Pa. at 200–04 n. 5, 519 A.2d at 390–91 n. 5; *see also Maguire v. Osborne*, 384 Pa. 430, 438–41, 121 A.2d 147, 152 (1956) (court will interpret contract in accord with the construction they have placed on it themselves); *Township of Raccoon v. Water Auth.*, 142 Pa.Cmwlth. 508, 597 A.2d 757, 765 (1991) (ambiguous term in a contract should be construed in accord with the parties' intent). The Township's only argument is that the requests are inconsistent with the clear language of the bond. Because, as stated earlier, we do not believe that this position is correct, the decision below must be affirmed.

Affirmed.