Commonwealth of Pennsylvania, State Highway and Bridge Authority and Pennsylvania Department of Transportation (PennDot), Petitioners *v.* E. J. Albrecht Co., Respondent.

Argued September 10, 1979, before Judges BLATT, DISALLE and MACPHAIL, sitting as a panel of three.

*Stuart Bliwas,* with him *Arthur H. Marateck,* Assistant Attorney General, and *Robert W. Cunliffe,* Deputy Attorney General, for petitioners.

*Alan A. Garfinkel,* with him *Berkman, Ruslander, Pohl, Lieber & Engel,* for respondent.

OPINION BY JUDGE MACPHAIL, January 16, 1980:

The Commonwealth of Pennsylvania, State Highway and Bridge Authority and Pennsylvania Department of Transportation (collectively, PennDot) have appealed from an order of the Board of Arbitration of Claims[1] (Board) directing PennDot to pay the sum of $105,513.05 together with interest to E. J. Albrecht Company (Albrecht).

Factually, the dispute arises from the interpretation of a construction contract entered into in 1969 between the parties for the improvement of a certain section of highways and bridges on L.R. 1039, Section 3, in Pittsburgh, Allegheny County. Among other things, the contract prepared by PennDot required Albrecht to do a substantial amount of excavation for which Albrecht was to be paid $3.00 per cubic yard or $20.00 per cubic yard depending upon whether the excavation was Class I, II, or III excavation. Albrecht's complaint against PennDot is in three parts. In its first count, Albrecht claims $74,632.55 for excavating

---

[1] Now the Board of Claims, Section 1 of the Act of May 20, 1937, P.L. 728, *as amended,* by Section 2 of the Act of October 5, 1978, P.L. 1104, 72 P.S. §4651-1.

work it did adjacent to retaining walls identified as F, G and H. The second count in the complaint concerns excavation for the removal of an underpass roof. Albrecht's claim for damages for that item is $26,-809.00. In the third count, Albrecht claims $4,172.14 for excavation adjacent to physical abutments or transitions from bridge to ground. PennDot has paid Albrecht at the rate of $3.00 per cubic yard for all of the disputed excavation work. Albrecht demands the difference between that rate and $20.00 per cubic yard. The parties have stipulated to the number of cubic yards actually removed.

Our scope of review is a narrow one. *Department of Transportation v. Driscoll Construction Co.*, 33 Pa. Commonwealth Ct. 296, 381 A.2d 516 (1978). We must affirm the Board unless we find that its order is not in accordance with the law or that there is not substantial evidence to support the findings of fact. *Department of Transportation v. Paoli Construction Co.*, 35 Pa. Commonwealth Ct. 390, 386 A.2d 173 (1978).

The only legal issue presented is whether the entire contract, including specifications and drawings, was ambiguous with reference to the question of whether the disputed excavation material was Class I, II or III. The Board held that it was ambiguous and, for that reason, should be construed against PennDot according to the decisions in *Hafer v. Schauer*, 429 Pa. 289, 239 A.2d 785 (1968), *overruled on other grounds* in *Incollingo v. Ewing*, 474 Pa. 527, 379 A.2d 79 (1977), and *Sykes v. Nationwide Mutual Insurance Co.*, 413 Pa. 640, 198 A.2d 844 (1964). The question of whether the contract is ambiguous is a difficult one because both parties point to technical information in the contract documents to sustain their respective positions. In addition, Albrecht placed particular emphasis on a (Plaintiff's exhibit 4). That letter, according to Al-PennDot transmittal letter dated December 1, 1971

brecht, was an attempt by PennDot to modify or, in the alternative, to clarify the very ambiguity which is the basis for the dispute in the instant contract. Penn-Dot insists that the letter is irrelevant to the present dispute because it plainly states that the modifications contained therein would apply to the preparation of plans in the future. The Board admitted the letter over PennDot's objection. While we are not absolutely certain what the Board intended when it included pertinent excerpts from the transmittal letter in Findings of Fact Number 20,[2] but followed those excerpts with this language: "The parties agree that the relevance of the transmittal letter and applicable drawing enclosed therewith is in dispute (stipulation of facts, par. 4)," we assume that the Board did consider the letter in reaching its result. There would have been no other reason to include it as a finding of fact, especially where it had been admitted into evidence over objection. In any event, there is nothing in the opinion which would lead us to conclude that the Board did *not* consider the letter in reaching its result.

---

[2] 'New No. RC-11, Old No. E-5, 3 of 3—(1) The Retaining Walls and Cribbing section was completely changed to more clearly designate the excav. limits for the case where there is a proposed new roadway construction and where there is no proposed roadway work. (2) The dwg. showing limits of channel Excav. and Structure Excav. was changed to eliminate the need for designating Cl. I Excav. under the structure quantities. The symbols for class of excav. at the lower left of the sheet were changed to clarify that Cl. I Excav. *will be* strictly a roadway item.'

. . . .

'Many of the revisions in these standards do not represent new standards, however, the title block format has been changed and minor drafting changes may have been made. It is desirable that the new features of these standards be incorporated immediately in *the preparation of plans. Complete compliance will be required on plans submitted to the Central Office after September 1, 1972.'* (Emphasis added.)

We have no difficulty in holding that the Board erred when it admitted the exhibit. Certainly there is nothing in the language of the letter which indicated in any way that it was intended to modify the instant contract. We agree with PennDot that the plain language of the letter clearly indicates that the modifications set forth therein were to affect plans prepared in the future, namely, after September 1, 1972.

Furthermore, it is our opinion that the consideration the Board gave the letter was crucial to its interpretation of the contract and, indeed, may have been the very reason the Board concluded that the contract was ambiguous. We say this because both parties refer to the drawings and legends on the third page of Plaintiff's exhibit 3 to sustain their respective positions. Albrecht's witnesses testified that the exhibit leaves a gap in the contract, but if exhibit 3 is interpreted in accordance with the transmittal letter, Albrecht must prevail. PennDot's witnesses testified that the letter could not be considered and that without it, the drawings and legends together with other excerpts from the contract introduced by them as a part of their case show conclusively that PennDot must prevail.

Inasmuch as the admission of the letter was prejudicial error and we are unable to determine from the findings of fact and discussion in the Board's adjudication whether the Board would have reached the same result without that evidence, we must remand the case for further consideration by the Board. *Wallingford-Swarthmore School District and Borough of Swarthmore Tax Appeals,* 7 Pa. Commonwealth Ct. 60, 298 A.2d 278 (1972).

### Order

And Now, this 16th day of January, 1980, the case is remanded to the Board of Claims for reconsideration in light of the foregoing opinion.

496

This decision was reached prior to the expiration of the term of office of Judge DiSalle.