Commonwealth of Pennsylvania, State Highway and Bridge Authority and Pennsylvania Department of Transportation (PennDot), Petitioner *v.* E. J. Albrecht Company, Respondent.

Argued February 5, 1981, before Judges BLATT, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three

*Mark F. Brancato,* Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for petitioner.

*Alan A. Garfinkel, Berkman, Ruslander, Pohl, Lieber & Engel,* for respondent.

OPINION BY JUDGE MACPHAIL, May 27, 1981:

The Commonwealth of Pennsylvania State Highway and Bridge Authority and Pennsylvania Department of Transportation (collectively, PennDot) have appealed from an order of the Board of Claims (Board) reaffirming its previous order[1] directing PennDot to pay the sum of $105,513.05 together with interest to the E. J. Albrecht Company (Albrecht).

This case is before us for the second time. We shall adopt herein the facts of this case recited by this Court in *Commonwealth of Pennsylvania State Highway and Bridge Authority and Pennsylvania Department of Transportation v. E. J. Albrecht Co.,* 48 Pa. Commonwealth Ct. 491, 409 A.2d 1202 (1980).

> Factually, the dispute arises from the interpretation of a construction contract entered into in 1969 between the parties for the improvement of a certain section of highways and bridges on L.R. 1039, Section 3, in Pittsburgh, Allegheny County. Among other things, the contract prepared by PennDot required Albrecht to do a substantial amount of excavation for which Albrecht was to be paid $3.00 per cubic yard or $20.00 per cubic yard depending

---

[1] The Board of Arbitration of Claims prior to October 5, 1978.

upon whether the excavation was Class I, II, or III excavation. Albrecht's complaint against PennDot is in three parts. In its first count, Albrecht claims $74,632.55 for excavating work it did adjacent to retaining walls identified as F, G, and H. The second count in the complaint concerns excavation for the removal of an underpass roof. Albrecht's claim for damages for that item is $26,809.00. In the third count, Albrecht claims $4,172.14 for excavation adjacent to physical abutments or transitions from bridge to ground. PennDot has paid Albrecht at the rate of $3.00 per cubic yard for all of the disputed excavation work. Albrecht demands the difference between that rate and $20.00 per cubic yard. The parties have stipulated to the number of cubic yards actually removed.

*Id.* at 492-93, 409 A.2d at 1203.

We said in our first opinion and we say again that the sole legal issue presented in this case is whether the entire contract, including specifications and drawings, was ambiguous with reference to the question of whether the disputed excavation material was Class I, II or III. In the Board's initial adjudication it held that the contract was ambiguous, proceeded to construe the contract against PennDot and awarded Albrecht the damages it was seeking. We deem it necessary to quote from the Board's discussion in that adjudication:

As in this type lawsuit, we have before this Board a problem as to the *interpretation* of a Contract. It is the Plaintiff's position that in reading the Contract, *it is unquestionable in their mind that the amount of excavation in question is classified as Class II*. It is unquestionable in the mind of the Defendant that in reading the four quarters [sic] of the Contract

that there is *no ambiguity* in the Contract and that the only possible interpretation anyone could arrive at is that the excavation in question is Class I Excavation. It is interesting to note that the original Contract called for 270,-628 cubic yards of excavation. Of this entire amount, it would appear that there is a controversey concerning 6,206.65 cubic yards.

In hearing all the testimony, and in reviewing the briefs as proposed and submitted by both counsel, it is the opinion of this Board that the Contract, as it relates to the 6,206.65 cubic yards of excavation, is ambiguous and, accordingly we must hold against the Commonwealth. It has long been the position of the Appellate Courts of this Commonwealth that if a Contract is ambiguous, then we must hold this Contract most strongly against the individual or institution that created the Contract. It is unquestionable in this case that the Contract was created and written by the Defendant. Accordingly, we must hold most strongly against the Defendant and grant the request of the Plaintiff. See Hafer vs. Schaurer, 429 Pa. 289; Sykes vs. Nationwide Mutual Insurance Co., 413 Pa. 640. (Emphasis added.)

Included in the Board's findings of fact in its initial adjudication was a PennDot transmittal letter admitted into evidence by the Board over PennDot's objection. We held the Board's evidentiary ruling with respect to that document to be in error and remanded the case for reconsideration in light of that error. In its "Remand Opinion," the Board has indicated that since it did not mention the transmittal letter anywhere *except* in its findings of fact, this Court should have understood that the letter was not considered in the adjudication. It has been our under-

standing that all evidence admitted by the Board as a fact-finder must be *considered* in an adjudication even though it may be ultimately rejected. In any event, the purpose of the remand has been accomplished because the Board has now assured us that they would have reached the same result had the inadmissible evidence not been received.

In its Remand Opinion, the Board also took the trouble to indicate to this Court that we had misperceived the issue of ambiguity in the contract. Quoting from our opinion where we said, "The question of whether the contract is ambiguous is a difficult one because both parties point to technical information in the contract documents to sustain their respective positions," the Board concludes that our recognition that both parties pointed to the terms of the contract to sustain their positions leads to the inevitable conclusion that there *is* an ambiguity and there is really nothing more to discuss. While we must defer to the expertise of the Board in a determination of the facts and while we respect their opinion concerning the law, we most respectfully suggest that our language did *not* indicate that there was an ambiguity but rather that Albrecht pointed to the technical information in the contract to sustain its contention that the contract was ambiguous while PennDot pointed to that information to sustain its contention that there was no ambiguity. At all times, both before the Board and this Court, PennDot has contended most forcefully that there is no ambiguity in the contract. Indeed, the Board's discussion from which we quoted, *supra,* acknowledges as much.

The question of whether an ambiguity exists is to be determined by the Court as a question of law. 17A C.J.S. *Contracts* §617 (1963). *Merriam v. Cedarbrook Realty, Inc.,* 266 Pa. Superior Ct. 252, 404 A.2d 398 (1978).

A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.

8 P.L.E. *Contracts* §146 (1971).

Notwithstanding the Board's thirty-two findings of fact, we find nothing in the Board's adjudication which indicates *wherein* the contract *is* ambiguous. The Board's statement that "In hearing all the testimony, and in reviewing the briefs as proposed and submitted by both counsel, it is the opinion of this Board that the contract, as it relates to 6,206.65 cubic yards of excavation is ambiguous" is clearly insufficient in and of itself to support the conclusion that an ambiguity exists.

Findings of fact #28-#32 typify the character of the Board's findings in this case. Therein the Board finds that the underpass subject of part of the disputed excavation had been constructed in a mound of dirt and consisted of two walls, a roof covered by dirt and on top a road bed. It finds that the contract plans called for the erection of Walls A and B and Abutment EB-1 by Albrecht presumably at the same location. It finds also that Albrecht removed the roof of the underpass and back-filled the tunnel to support California Avenue, the new roadway placed on top of the area where the roof excavation had occurred. The Board found that the road was not a structure. To-

gether these findings do not indicate an ambiguity. They may indicate that the excavation was Class I, II or III, but that does not involve an interpretation of the terms of the contract but rather an application of the terms of the contract to the physical circumstances and construction procedures employed by Albrecht.

The Board's conclusion that the contract is ambiguous is simply not supported by its findings of fact. Since the question of whether the contract is ambiguous is a matter of law, however, we have reviewed the record to make our own independent determination of that issue.

We begin with an analysis of the plaintiffs' complaint which consists of three counts. Such an analysis is necessary in order to ascertain whether Albrecht has *pleaded* an ambiguous contract. As we have noted, the first count relates to excavation adjacent to retaining walls F, G, and H. The complaint alleges that PennDot's transmittal letter clarified that the disputed excavation with respect to those retaining walls was Class II. We have held that that letter was inadmissible in this case. Therefore, it has no probative value in proving that there was an ambiguity in the contract. The only other allegation in Count 1 that even hints of an ambiguity is a statement that standard drawing E-5 does not indicate the classification where only some "minor" excavation is to be performed in front of the retaining walls. The contract documents do not define the classification of excavation in terms of "minor" and "major." Rather, those documents clearly indicate that where there is *no* excavation in front of the retaining walls then all excavation is Class II or Class III. The converse would seem to follow, *i.e.,* where there was *any* excavation in front of the retaining walls, all such excavation would be Class I. Albrecht complains that such a result is unfair and that may be true but that does not

mean that the contract is ambiguous. Albrecht's complaint also says that whether the excavation is Class I, II, or III depends upon the type of equipment used in the excavating. While that may be Albrecht's customary manner to determine the class of excavation, custom cannot prevail where the terms of a contract are clear and unambiguous. *Gallizzi v. Scavo,* 406 Pa. 629, 179 A.2d 638 (1962).

Proceeding now to Count 2 of the complaint, we note that it concerns the removal of an underpass roof. In this instance Albrecht cites what it perceives to be an inconsistency between paragraph 204.1(a)4 of the specifications and the designer's designation of the class of excavation on the drawings. It is clear that the design drawings do show the excavation for this part of the work to be Class I. Section 204.1(a)4 of the specifications states that where underground structures are to be removed but not replaced by a structure the excavation is Class II. Albrecht *interprets* Section 204.1(a)4 to apply to the removal of the underpass roof and then concludes that there is an inconsistency between the drawings and the specifications. PennDot answers these allegations by stating that a rigid frame underpass *was* removed and replaced by a structure in this phase of the construction and, therefore, Section 204.1(a)4 does not apply. Unfortunately, we are unable to determine from the Board's findings of fact whether an underground structure was or was not removed and replaced by a structure. Until that factual issue is resolved, there can be no inconsistency between the drawings and the specifications. If that factual issue is resolved in favor of Albrecht's contention, it will then be necessary to determine whether the drawings or specifications control. That determination may indeed result in a conclusion that the contract *in this respect* is ambiguous. On the other hand, however, if the factual

issue is resolved against Albrecht's contention, then clearly the drawings control and the excavation must be classified as Class I.

Count 3 of the complaint relates to abutment FR-1, Bent ORB-3 and Bent F-4. It is alleged that all of these structures are physical abutments or transitions which retain dirt. The Board has made no finding with respect to that allegation. Albrecht also says that the drawing for Bent ORB-3 *shows* that the excavation there should be Class III excavation, again, an issue of fact not resolved by the Board's findings. We are constrained to note, however, that there is nothing in Count 3 of the complaint which could possibly be construed as alleging an ambiguity in the contract.

We proceed now to a review of the extensive testimony to ascertain whether Albrecht has *proved* an ambiguous contract. PennDot's position simply stated is that its drawing E-5 entitled "classification of earth work" clearly indicates how the excavation on this project was to be classified. Albrecht's witness, Kruger, testified that prior to and after December 1, 1971 the contractor *was performing* according to whatever drawings were contained on that exhibit. In addition, Albrecht contended that it *was relying* on certain sections of the specifications to wit, Sections 203.1 and 204.1. Nevertheless, throughout the testimony it was Albrecht's contention that no matter what the drawings may have shown, if the production method was "fast" it was Class I excavation, but if it was "slow" it was Class II or III. That contention may or may not be valid but it simply does not involve a problem of an ambiguous contract.

Other examples taken from the testimony would only unduly extend this opinion. We conclude that there was no ambiguity in this contract with respect to the excavation problem.

There remains, of course, the question of whether the excavation in question is *in fact* Class I, II, or III. We have carefully reviewed the Board's extensive findings of fact and believe that, indeed, with respect to Albrecht's first cause of action the Board may have concluded that the excavation there involved was Class II.[2] Our only hesitation in accepting that conclusion as final is that if the Board indeed found as a fact that such excavation was Class II, why was it then necessary for the Board to address the question of an ambiguous contract? In any event, there is no similar language in the Board's findings of fact with respect to Albrecht's second and third causes of action, *i.e.*, whether the excavation was Class I, II or III.

The Board is entrusted with the duty of fact finding, *Lipchak v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 451, 383 A.2d 970 (1978), and we may neither assist nor interfere with that important function. This Court has held that "[w]hen the fact-finder in an administrative proceeding is required to set forth his findings in an adjudication, that adjudication must include all findings necessary to resolve the issues raised by the evidence which are relevant to the decision." *Lipchak, supra* at 457, 383 A.2d at 972.

Under our established scope of review, we must affirm the Board unless we find that its order is not in accordance with the law or that there is not substantial evidence to support the findings of fact. *De-*

---

[2] Finding of Fact No. 18 reads as follows:

The following are the quantities in the First Cause of Action that shall be classified as Class II:

| Wall | Excavation Behind Wall |
|---|---|
| F | 858.3 cu. yds. |
| G | 3,286.8 cu. yds. |
| H | 216.5 cu. yds. |

*partment of Transportation v. Paoli Construction Company,* 35 Pa. Commonwealth Ct. 390, 386 A.2d 173 (1978). We have determined that the Board's order is not in accordance with the law. We likewise conclude that we have inadequate findings from the Board to enable us to determine who should prevail in this law suit. Regrettably, that conclusion requires us to order another remand to the Board but we are satisfied that we have no choice if a just result is to be achieved.

ORDER

AND Now, this 27th day of May, 1981, the case is remanded to the Board of Claims for further findings and reconsideration consistent with the foregoing opinion.

Judge WILKINSON, JR. did not participate in the decision in this case.