575 A.2d 661

**Victor F. NOVAK and Thelma Novak, his wife, Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1990.

Decided May 18, 1990.

---

Shirley Novak, with her, Alvin E. Dillman, Jr., Zoffer, Dillman, Hacknery, Friedman & Wiedner, Pittsburgh, for petitioners.

Jeffrey L. Giltenboth, Sr. Asst. Counsel, with him, William J. Cressler, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and BARRY, Senior Judge.

PELLEGRINI, Judge.

Victor and Thelma Novak (Novaks) petition for review of a decision of the Board of Property (Board) denying a request requiring the Pennsylvania Department of Transportation (PennDOT) to convey a certain parcel of property to the Novaks by granting an order for specific performance.

To accomplish the construction of Interstate 279 (I–279), PennDOT condemned certain residential and commercial properties owned by the Novaks. To settle these condemnation cases, PennDOT and the Novaks entered into an agreement on October 31, 1981, where, in addition to monetary compensation, the Novaks were to receive two parcels of land to be conveyed in two phases.

Pursuant to the agreement, the first parcel was conveyed to the Novaks on February 1, 1982. The second parcel under the agreement was to be conveyed as follows:

The second parcel of ground is described as follows: Portions of Lots 151, 152 and Lots 166 through 175 and Lot 187 of the aforesaid Lapsely Plan which the Commonwealth deems unnecessary for highway use. The determination of what portions of the above-mentioned lots deemed unnecessary will be decided by the COMMONWEALTH after the final design of the above-mentioned highway has been approved. Within a reasonable time thereafter, the COMMONWEALTH will convey to the condemnees the remaining portion of the aforementioned lots which will not be used for highway purposes.

The survey which is labeled Exhibit "A" and attached hereto is hereby incorporated in this stipulation.

Reproduced Record 25–A.

In 1988, the Novaks filed an action in equity in the Court of Common Pleas of Allegheny County seeking specific performance alleging that PennDOT was obligated to convey the second parcel because the parcel was no longer necessary for the construction of I–279. PennDOT filed preliminary objections claiming jurisdiction lies with the

Board of Property. Pursuant to its authority,[1] the Board of Property denied relief to the Novaks, since the final design of the highway had not been approved, and PennDOT was not obligated to convey the property until such time. The instant appeal followed.

The issue before this court is whether the Board erred when interpreting the agreement as not requiring the immediate conveyance by PennDOT to the Novaks of the second parcel of land when the final design of the entire highway project was not yet completed.

■■■ Our scope of review of a Board of Property determination is limited to whether constitutional rights have been violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Pennsylvania Game Commission v. Ulrich*, 129 Pa. Commonwealth Ct. 376, 565 A.2d 859 (1989). The function of contract interpretation and construction is a question of law peculiarly within the province of this court. *Department of Transportation v. Mosites Construction Company*, 90 Pa. Commonwealth Ct. 33, 494 A.2d 41 (1985).

■■■ The Novaks contend that the Board erred in interpreting the language "final design of the above mentioned highway" contained in the agreement to mean completion of the I–279 highway project. They argue that "final design of the above mentioned highway" does not mean I–279, but describes the realignment of several local streets which has already been accomplished. The basis of this contention is that the term highway was never defined, and in the agreement should refer only to streets that affect the ability of PennDOT to convey its property. More specifically, because neither "highway", "East Street Valley Expressway", or "I–279" was expressly defined in the agreement, the

1. Jurisdiction in such matters is lodged in the Board by virtue of Section 1207 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 337. *See McCullough v. Commonwealth of Pennsylvania, Department of Transportation*, 116 Pa. Commonwealth Ct. 215, 218, 541 A.2d 430, 431 (1988).

Novaks contend the completed realignment of Boyer and Hazlett Streets is the highway referenced in the agreement.

Because those streets have been realigned and constructed, the Novaks contend the completed work obviates Penn-DOT's need for the second parcel of land for highway construction. The Novaks then argue that PennDOT is in breach of contract since the agreement required PennDOT to convey the property within a reasonable time after approval of the highway's final design. The Novaks maintain the omission is an ambiguity and should be interpreted most strongly against its drafter, PennDOT.

As this court stated in *Department of Transportation v. L.C. Anderson & Sons, Inc.,* 69 Pa. Commonwealth Ct. 601, 603, 452 A.2d 105, 106 (1982):

> Whether an ambiguity exists is to be determined by the Court as a question of law. . . . A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction. *State Highway and Bridge Authority v. E.J. Albrecht Co.,* 59 Pa. Commonwealth Ct. 246, 430 A.2d 328 (1981).

While poor draftmanship arguably may exist, a contract ambiguity does not exist. Typically, highway and street are not used interchangeably. In popular usage, highway refers to a main public road connecting towns or cities, whereas a street is an urban way or thoroughfare, lined or intended to be lined by houses on each side.[2] Moreover, *Anderson* dictates that in determining the meaning of a word, its industry usage shall be given effect. Both the common usage and the transportation trade industry term when referring to highway refer to the entire highway project.

2. See Black's Law Dictionary 656, 1274 (5th ed. 1979).

██ The Novaks also argue that the language mandating PennDOT to convey the property within a "reasonable time thereafter" does not contemplate final design approval as resting with the federal government. The agreement expressly provides that PennDOT need not convey the second parcel until the lots are deemed unnecessary for highway use and after final design of the highway has been approved. Because I–279 is partially funded by the federal government and is part of the federal interstate system, final design has to be approved by the federal government. Until that approval has been received, PennDOT has no obligation to convey the disputed parcel of land to the Novaks.[3]

As the Board explained in its opinion, the substantial amount of discretion which the agreement affords PennDOT may not be particularly favorable to the Novaks. Nevertheless, the contract is enforceable as written.[4]

██ Finally, the Novaks argue that a notation on a copy of the survey, which is incorporated in the stipulation agreement as Exhibit A and was attached to the deed conveyed to the Novaks by PennDOT for the first parcel of land, identifies final design as the alignment of the streets listed. The Novaks' reliance on the attachment is misplaced. As stated by the Board, the deed, conveyed with the survey, only covered the first parcel of land. Therefore, the deed cannot control the disposition of the second land parcel because it is extrinsic evidence and need not be considered absent unclear or ambiguous language. *Id.*

As the record indicates, the East Street Valley Expressway highway project, because of its size, the population

3. This is not to say that PennDOT can allow itself to be bogged down in a bureaucratic limbo forever and not actively seek approval from the federal government. If that were the case, then the Novaks would have a cause of action against PennDOT because implicit in agreements of this type is an obligation that PennDOT will make a reasonable effort to seek approval.

4. Because PennDOT's duty to convey the second parcel of land has yet to ripen, we need not determine what constitutes a reasonable length of time between the approval of the final design of the highway and the conveyance to the Novaks pursuant to the agreement.

density and cost, has had substantial governmental involvement. (Reproduced Record 45-A). The governmental approval may have created more delays than anticipated by either of the parties to the agreement. However, no evidence has been introduced that PennDOT capriciously delayed receiving final design approval to avoid its contractual obligation.

Clearly, all parties to this settlement agreement understood or should have understood that completion of the highway meant the I-279 project, which includes the interstate, and the construction of all interchanges, feeders and local streets necessitated by its construction and not just local feeder streets.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 18th day of May, 1990, the order of the Commonwealth of Pennsylvania Board of Property, Docket No. BP-89-02, dated June 19, 1989, is affirmed.