IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, Bureau of : 
Liquor Control Enforcement, : 
                            Appellant : 
                                      : 
              v. : 
                                        :    No. 2706 C.D. 2015
Big D Restaurants, LLC :    Submitted: May 27, 2016

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: September 8, 2016

         The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals from the Allegheny County Common Pleas Court's (trial court) December 3, 2015 order dismissing a citation that charged Big D Restaurants, LLC (Licensee) with violating the Liquor Code[1] by failing to adhere to conditional licensing agreement (CLA) terms. The Bureau presents three issues for this Court's review: (1) whether the trial court erred by sustaining Licensee's due process challenge; (2) whether the trial court erred by concluding that the relevant CLA term was ambiguous and thus, Licensee did not violate the CLA; and, (3) whether the Bureau presented substantial evidence to the trial court to support Licensee's CLA violations.

         Licensee holds Restaurant Liquor License No. R-7831 (License). The License is held subject to a CLA entered into with the Pennsylvania Liquor Control

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 - 10-1001.

Board (Board) on April 27, 2010 under which Licensee agreed to additional restrictions on the License and the licensed premises.[2]

Paragraph 5 of the CLA imposed the following restrictions and obligations:

a. [Licensee] shall within ninety (90) days of the approval of this Agreement, become compliant with and remain compliant with the Responsible Alcohol Management provisions of the Liquor Code. . . ;

b. **[Licensee] shall use a metal detecting wand on all patrons entering the premises and shall prohibit patrons from bringing weapons into the premises**;

c. [Licensee] shall maintain and enforce a written barred patrons list on the licensed premises. . . . ;

d. **[Licensee] shall maintain adequate security at the premises, including the employment of one (1) security guard between the hours of 9:00 p.m. and closing time on all Monday through Thursday evenings, and two (2) security guards between the hours of 9:00 p.m. and closing time on all other evenings that [Licensee] is operating. At least one (1) security guard shall be present on the exterior of the premises beginning one half (1/2) hour prior to closing and remaining until one half (l/2) hour after closing, to ensure the orderly departure of patrons and monitor their departure. In addition, the security guard or another employee at [Licensee] shall conduct a patrol of the entire exterior of the premises, including the parking lot, every one half (1/2) hour, from 9:00 p.m. until closing on all nights of operation. A record of each patrol, including the date and time of the patrol and the name of the employee conducting the patrol, shall be maintained by [Licensee] as a business record, subject to [S]ection 493(12) of the Liquor Code**;

---

[2] Licensee entered into the CLA to address the Board's Bureau of Licensing's (Licensing) concerns regarding Licensee's transfer application. Specifically, the Board objected to Licensee's sole member's reputation based on the member's involvement with another license and a criminal conviction for workers' compensation fraud.

e. [Licensee] shall maintain regular monthly contact with local police in order to address any problems. . . . ;

f. [Licensee] shall maintain and monitor the two (2) existing surveillance cameras. These cameras shall be operational whenever the premises is open for business. . . . ;

g. [Licensee] shall immediately notify the police upon becoming aware of any unlawful activity occurring on or about the licensed premises;

h. [Licensee]'s member or manager will attend monthly Homewood-Brushton Public Safety Committee meetings. . . .

Reproduced Record (R.R.) at 182a-184a (emphasis added).

On May 2, 2013, the Bureau notified Licensee that it had received information pertaining to two alleged violations that may result in a citation:

1. SMOKED AND/OR PERMITTED SMOKING IN A PUBLIC PLACE WHERE SMOKING IS PROHIBITED. . . .

2. FAILED TO ADHERE TO THE CONDITIONS OF THE AGREEMENT ENTERED INTO WITH THE BOARD PLACING ADDITIONAL RESTRICTIONS UPON THE SUBJECT LICENSE. . . .

R.R. at 175a. On May 24, 2013, the Bureau issued a citation (Citation) which charged Licensee as follows:

1. On January 28, February 4, 20, and March 13, 2013, you, by your servants, agents or employees, smoked and/or permitted smoking in a public place where smoking is prohibited, in violation of Section 471 of the Liquor Code, 47 P.S. §[ ]4-471 and Section 637.6(a)(2) of the Clean Indoor Air Act,[3] 35 P.S. § 637.6(a)(2). [(Count One)]

2. On January 28, February 4, 20, and March 13, 2013, you, by your servants, agents or employees, failed to adhere to the conditions of the agreement entered into with the Board placing additional restrictions upon the subject license, in

_____

[3] Act of June 13, 2008, P.L. 182, 35 P.S. §§ 637.1-637.11.

violation of Section 404 of the Liquor Code, 47 P.S. §[ ]4-404. [(Count Two)]

R.R. at 176a-177a.

An administrative law judge (ALJ) hearing was held on January 15, 2014. At the hearing, Licensee admitted to the Count One violation.[4] *See* R.R. at 129a. Thereafter, the following exchange occurred:

> [BUREAU'S ATTORNEY]: Your Honor, regarding [C]ount [T]wo, as I understand it, **[L]icensee is stipulating that on the dates charged in the [C]itation that the [Bureau's Enforcement O]fficer [Nicole Beswick-Uzarski (Officer)] was not wanded when she entered the subject establishment.**
>
> [LICENSEE'S ATTORNEY]: Well, Your Honor, the [O]fficer is going to testify. I just have one or two questions.
>
> [ALJ]: All right. You want the [O]fficer to testify?
>
> [LICENSEE'S ATTORNEY]: I just - - -.
>
> [ALJ]: This is the type of case where I wasn't certain if there was any factual dispute.
>
> [LICENSEE'S ATTORNEY]: However you want to proceed, Your Honor. **We're not arguing that the individual was not wanded at the time --- we're not arguing that the [O]fficer was not wanded at the time they [sic] went in.**
>
> [ALJ]: **Based on your pre-hearing memorandum, you're arguing - - -.**
>
> [LICENSEE'S ATTORNEY]: **Our argument is it wasn't required.**

---

[4] The trial court stated in its opinion: "The smoking issue seems to have fallen by the way side for it was not addressed in either the Administrative Appeal or before me . . . ." R.R. at 109a. However, at the ALJ hearing, the ALJ asked Licensee's counsel: "[Licensee] is admitting to a violation of Count [O]ne?" R.R. at 129a. Licensee's Counsel responded: "Yes, Your Honor. Our position here is, you know, we are agreeable that [C]ount [O]ne did occur." *Id*. Accordingly, the ALJ upheld the Count One violation.

4

[ALJ]: **You raise there's some ambiguity in the [CLA]?**

[LICENSEE'S ATTORNEY]:  **Correct, Your Honor.**

[ALJ]: All right.

[LICENSEE'S ATTORNEY]: We're arguing it wasn't required at the time.

[ALJ]: That's a matter we'll have to address as the hearing progresses.  I don't know that - - -.

[LICENSEE'S ATTORNEY]: My questions for the [O]fficer are all focused on her interaction with the officer as a mitigation if Your Honor were to find that - - -.

[ALJ]: That's fine.  The Bureau's witnesses are here and they can be sworn and testify.  You can cross-examine. Perhaps we can make it brief.  Whatever needs to be done is fine.

[BUREAU'S ATTORNEY]: Your Honor, excuse me. Regarding [C]ount [T]wo, to clarify, **my understanding is that [L]icensee's counsel would like to question my [O]fficer regarding [Licensee's] mitigation, but he's not requesting that [the Officer] testify.  He's stipulating.**

[ALJ]: All right.

[LICENSEE'S ATTORNEY]:  **That's correct.**

[BUREAU'S ATTORNEY]: [The Officer] is here just to respond to [Licensee's] questions that regard mitigation.

[ALJ]: All right.  That's fair enough.  **So basically this Court is then - - - the parties are asking that this Court utilize the facts as presented in the Bureau's pre-hearing memorandum as the basis for its findings of fact in lieu of direct testimony at this hearing?**[5]

---

[5] During the hearing, the Bureau's attorney asked:

[BUREAU'S ATTORNEY]: Judge, just one other question.  Would the Court want my copy of the pre-hearing memorandum or the Court will use its own?

[BUREAU'S ATTORNEY]: That's correct.

[ALJ]: Is that accurate?

[LICENSEE'S ATTORNEY]: **That's correct,** Your Honor.

[ALJ]: This is both for counts one and two; is that correct . . . ?

[BUREAU'S ATTORNEY]: Yes.

[LICENSEE'S ATTORNEY]: Correct, Your Honor. We're content with the veracity of the [O]fficer.

R.R. at 130a-133a (emphasis added). The Officer's testimony did not include descriptions of her visits to the premises on the dates in question. Instead, she stated briefly that she was responsible for the investigation that resulted in the subject Citation and, on cross-examination, she testified regarding the dates and times she was present in the licensed premises. The Officer admitted that she had not been in the premises after 9:00 p.m., that she visited in an undercover capacity, and that she had not spoken with the owner during any visits to the licensed premises.

Licensee's sole member Derrick L. Hemby (Hemby) described Licensee's operation, and explained that, based on his understanding of the CLA, Licensee was only required to wand customers during the times that security is present. Licensee's counsel argued to the ALJ that Licensee had not violated the

---

[ALJ]: **I can take official notice of that. Is there any objection . . . ?**

[LICENSEE'S ATTORNEY]: **No.**

[ALJ]: I have the pre-hearing [memorandum] and I assume there are no amendments.

[BUREAU'S ATTORNEY]: Yes.

[ALJ]: Thank you.

R.R. at 139a (emphasis added). The Bureau's pre-hearing memorandum was not offered into evidence.

CLA because the CLA's wanding provision was ambiguous and should be interpreted to require wanding only at times when the CLA required security at the premises.

On April 15, 2014, the ALJ issued his adjudication. The ALJ made the following factual findings regarding Citation Count Two:

3. Licensee entered into a . . . CLA[] with the Board on April 27, 2010. Provision 5(b) of this [CLA] states as follows: '[Licensee] shall use a metal detecting wand on all patrons entering the premises and shall prohibit patrons from bringing weapons into the premises;' (Stipulated, N.T. pp. 5, 12)[.]

4. On Monday, January 28, 2013, between 4:03 p.m. and 5:01 p.m., an . . . Officer conducted an undercover visit of Licensee's premises and observed a female bartender rendering service to the patronage. Upon entering, the . . . Officer, as well as other patrons who entered, were not scanned with a metal detecting wand. (Stipulated, N.T. pp. 4-5, 18)[.]

5. On Monday, February 4, 2013, between the hours of 5:14 p.m. and 6:00 p.m., an . . . Officer conducted an undercover visit of Licensee's premises and observed a female bartender rendering service to 10 patrons. Upon entering, the . . . Officer was not scanned with a metal detecting wand. (Stipulated[,] N.T. pp. 4-5, 18)[.]

6. On Wednesday, February 20, 2013, between the hours of 4:38 p.m and 5:57 p.m., two [e]nforcement [o]fficers conducted an undercover visit of Licensee's premises and observed a female bartender rendering service to approximately 30 patrons. Upon entering, the [e]nforcement [o]fficers were not scanned with a metal detecting wand. (Stipulated, N.T. pp. 4- 5, 18)[.]

7. On Wednesday, March 13, 2013, between the hours of 7:30 p.m. and 8:19 p.m., two [e]nforcement [o]fficers conducted an undercover visit of Licensee's premises and observed a female bartender rendering service to 10 patrons. Upon entering, the [e]nforcement [o]fficers were not scanned with a metal detecting wand. (Stipulated, N.T. pp. 4 -5, 18, 32)[.]

7

R.R. at 195a-196a. Based thereon, the ALJ concluded that the Bureau met its evidentiary burden.[6] The ALJ rejected Licensee's contention that the CLA's paragraph 5(b) wanding provision is ambiguous and/or requires wanding only when security is at the premises. Licensee appealed to the Board which, by July 16, 2014 Opinion (July 16, 2014 Board Decision), affirmed the ALJ's decision. Licensee appealed to the trial court.

The trial court held a *de novo* hearing on September 1, 2015, during which the Bureau[7] introduced the record made before the ALJ, including the Citation and notes of testimony, but offered no additional evidence.[8] Hemby testified on Licensee's behalf. On December 3, 2015, the trial court issued its opinion dismissing the Citation.

The trial court declared that Licensee was denied due process because the Citation did not identify the CLA's particular sub-paragraph that Licensee purportedly violated. Further, the trial court held that the Bureau failed to present substantial evidence to prove Licensee's CLA violation. Finally, the trial court accepted Licensee's contention that since the CLA's paragraph 5(b) wanding provision was ambiguous, it could reasonably be read to only require wanding during

---

[6] The ALJ imposed upon Licensee a $200.00 fine for the Count One violation, and a $600.00 fine for the Count Two violation.

[7] The trial court appears to have confused the Board with the Bureau in this case. The Board is the Commonwealth agency authorized to issue licenses for the sale of liquor, wine and malt or brewed beverages. *See* Section 207 of the Liquor Code, 47 P.S. § 2-207. The Bureau is the branch of the Pennsylvania State Police that "is responsible for enforcing the Liquor Code." *Pa. State Police v. Hospitality Invs. of Phila., Inc.*, 689 A.2d 213, 214 (Pa. 1997). The Board hears appeals from ALJ citation hearing decisions. *See* 47 P.S. § 4-471.

[8] The trial court incorrectly refers to the ALJ's adjudication as "the recommended decision of the ALJ," and refers to the Board's July 16, 2014 decision as "the Board's adoption of that recommendation." R.R. at 108a. The ALJ's adjudication is not a "recommended" adjudication. Licensee **appealed** from the ALJ's decision to the Board. The Board's disposition of Licensee's **appeal** resulted in the July 16, 2014 Board Decision. *See* Section 471(b) of the Liquor Code, 47 P.S. § 4-471(b).

times when security was required to be at the licensed premises. The Bureau appealed to this Court.[9]

The Bureau first argues that the trial court erred by dismissing the Citation on grounds that Licensee's due process rights were violated. We agree.

The trial court's opinion states:

[The Citation] was challenged on the basis of lack of due process in that the [C]itation does not tell [Licensee] what it is accused of. It merely says it '[f]ailed to adhere to the condition of an agreement entered with the Board.' This cryptic language gives [Licensee] no information about what it did or is accused of doing. Indeed, it did not even reference the section or paragraph in the CLA. This strikes me as a denial of due process. As to the due process issue, Counsel and the ALJ and the Board place great emphasis on a certain 'pre-hearing memorandum' allegedly filed by the prosecution. While the same is referenced in the Administrative Record it was never made an exhibit there or in front of me. I note in the Administrative Record, at page 6, in reference to that pre-hearing memorandum, Counsel for [Licensee] said: 'It's not being introduced[.'] That accounts for it not being in the Administrative Record. Further, the [Bureau] did not introduce this memorandum before me. Counsel for [Licensee] . . . argues that due process, at a minimum, requires a sufficient listing and explanation of the charges.

Obviously that did not occur here. Further[,] the effort to cure that error by writing up a 'pre-hearing memorandum' - which was not offered in evidence either before the ALJ or me - is woefully inadequate. . . .

Finally, [the Bureau's] Counsel objects to the due process issue being raised in the de novo trial and again erroneously cites to Appellate Court Standards, not de novo trials.

---

[9] "This Court's standard of review in a Liquor Code enforcement appeal is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Pa. State Police, Bureau of Liquor Control Enforcement v. Kenrich Athletic Club, License No. C-1297,* 49 A.3d 13, 18 n.7 (Pa. Cmwlth. 2012).

9

Counsel for [Licensee] has persuasively argued that the [C]itation is defective because it gives no notice of the basis of the [C]itation. It merely cites the CLA but makes no reference to any subparagraph of it. Thus[,] the Citation should be dismissed on that ground alone.

R.R at 109a-110a (quotation marks omitted).

This Court has explained that "**due process notice requirements are fulfilled when the licensee is informed of the type and the date of the alleged violation.**" *Derry St. Pub, Inc. v. Pa. State Police, Bureau of Liquor Control Enforcement*, 111 A.3d 1240, 1246 (Pa. Cmwlth. 2015) (emphasis added). Further, "the [Bureau] is given wide latitude in the generality of its charges." *Pa. Liquor Control Bd. v. Reda*, 463 A.2d 108, 109 (Pa. Cmwlth. 1983). Although the Bureau "is given wide latitude[,]" we agree that, given CLA paragraph 5's eight separate conditions, the violation set forth in Citation Count Two was inadequate to inform Licensee of the specific conduct supporting the charge. *Id.* However, that is not the end of our due process inquiry.

In *Moore v. Department of Transportation, Bureau of Motor Vehicles*, 19 A.3d 1200 (Pa. Cmwlth. 2011), this Court stated:

Due process is a flexible concept and imposes only such safeguards warranted by the situation. **Although notice is essential to due process, due process notice requirements are non-technical.** Adequate notice for purposes of procedural due process consists of, at a minimum, a sufficient listing and explanation of the charges. The meaningful opportunity to be heard requirement of procedural due process entails an appropriate hearing. In assessing an alleged denial of procedural due process, **demonstrable prejudice is a key factor**.

*Id.* at 1204 (citations omitted; emphasis added).

Notwithstanding the Citation's lack of specificity, it is clear that Licensee was aware of the basis for the Count Two charge at the time of the ALJ hearing, and that **demonstrable prejudice did not occur**. At the ALJ hearing,

10

Licensee's counsel explained that Licensee was "not arguing that the [O]fficer was not wanded at the time [she] went in. . . . Our argument is it wasn't required." R.R. at 130a-131a.[10] Further, Hemby acknowledged that he understood the basis of the Citation, and Licensee's evidence focused almost exclusively on the wanding and security the CLA required. On direct examination, Hemby testified as follows:

> Q. **Are you familiar with the conditions that brought us here today?**
>
> A. **Yes, I am, sir.**
>
> Q. What's your understanding of the **conditions in question** for the [CLA] you signed?
>
> A. I was under the impression that the agreement stated from the time 9:00 p.m. to 2:00 a.m., Monday through Thursday that I was supposed to have two security [guards] from those hours and Friday and Saturday I was supposed - - - no, excuse me - - - two security [guards] Friday and Saturday; one Monday through Thursday **and that everybody must be wanded and that was carried out during those hours**.
>
> Q. Okay. So you have security Monday through Thursday, one; Friday and Saturday, two in conformity with the agreement?
>
> A. Yes.
>
> Q. Do those security [guards] wand every patron that comes in after 9:00?
>
> A. Yes, they do.
>
> Q. And that was your interpretation of the [CLA]; correct?

---

[10] Licensee's counsel's agreement to stipulate to the facts contained in the Bureau's pre-hearing memo further establishes that Licensee had notice of the basis for the charges at the ALJ hearing. Further, Licensee's counsel submitted a post-hearing brief to the ALJ that addressed the wanding condition as the basis for Count Two of the Citation.

> A. Right. I grouped everything under security's responsibility and me overseeing it.

R.R. at 148a-149a (emphasis added). The remainder of Hemby's testimony focused almost entirely on these issues. Counsel's representations and Hemby's testimony demonstrate that Licensee was well aware of the basis for the Citation Count Two and presented evidence accordingly.[11] Thus, no prejudice occurred.

Even if we ignored Licensee's Counsel's aforementioned statements to the ALJ and Hemby's admissions, we still conclude that Licensee was afforded due process since "a party's full participation in a trial court's *de novo* hearing, as was the case here, will cure a prior notice deficiency." *Paey Assocs. v. Pa. Liquor Control Bd.*, 78 A.3d 1187, 1192 (Pa. Cmwlth. 2013). Any alleged confusion or lack of clarity regarding the basis for the Citation Count Two was definitively resolved upon issuance of the ALJ's decision. Thus, when Licensee appeared before the trial court, it undoubtedly was aware of the basis for the Citation and presented evidence accordingly.[12] Therefore, we hold that the trial court erred by concluding that Licensee was denied due process.

---

[11] Notably, Licensee did not raise any objection to the Citation's specificity at the ALJ hearing. In fact, Licensee's Counsel stipulated that the Bureau complied with the Liquor Code's notice provisions in issuing the Citation. *See* R.R. at 139a-140a. While Licensee was permitted to raise the due process issue at the *de novo* hearing before the trial court, it stretches credulity to believe that had Licensee been unaware of the basis for the Citation, its counsel would not have raised the due process argument before the ALJ; that counsel would have focused Hemby's testimony almost exclusively to the wanding issue; or that counsel would have stipulated to the ALJ that it had received proper notice of the violation.

[12] We further reject Licensee's contention that "[s]ince the record of an administrative hearing is admissible at the [trial court] level . . . the testimony elicited at the administrative level would retain such prejudice at the *de novo* hearing should the administrative record be devoid of a reference to what is actually being charged." Licensee's Br. at 10. The record reflects that Licensee was aware of the bases for the charges at the administrative hearing. Further, although the trial court is required to receive the administrative record below, if offered, *see Pa. State Police, Bureau of Liquor Control Enforcement v. Kelly's Bar, Inc.*, 639 A.2d 440 (Pa. 1994), it is free to determine the weight and credibility of the evidence. *See In re Hotel Liquor v. TABS Entm't, Inc.*, 125 A.3d 487 (Pa. Cmwlth. 2015); *see also CSC Enters. v. Pa. State Police, Bureau of Liquor*

The Bureau also contends that the trial court erred by holding that the CLA's wanding provision was ambiguous and, thus, Licensee did not violate the CLA. We agree.

The trial court considered Hemby's testimony, reviewed the CLA and explained:

> Subparagraph [5(]b[) of the CLA] requires [Licensee] to 'use a metal detecting wand on all patrons entering the premises . . .' and subparagraph [5(]d[) of the CLA] requires that '[Licensee] shall maintain adequate security at the premise, including the employment of one (1) security guard between the hour of 9:00 p.m. and closing time on Monday through Thursday evenings and two (2) security guards between the hour of 9:00 p.m. and closing time on all other evenings that [Licensee] is operating. . . [.]'
>
> The Board contends that [Licensee] violated subparagraph [5(]b[)] of the CLA because it did not 'wand' prior to 9 p.m. [Hemby], the proprietor[,] explained that he believed the wanding was an element of <u>security</u> and that only security guards should do the wanding. He explained that a customer would rightly be intimidated and fearful if approached by a lay person (i.e. not security personnel) with an object that could easily be interpreted as a weapon. Thus[,] Hemby did not wand when security was not present to do it. He asserts an ambiguity in the CLA which justified his action.
>
> I am inclined to agree with Hemby. The CLA makes no mention of who shall do the wanding; it makes no reference in subparagraph [5(]d[) of the CLA] - the security guard section - back to subpara[graph 5(]b[) of the CLA] - the wanding.
>
> I[,] therefore[,] find it reasonable that Hemby thought the wanding was only required after 9[:00] p.m.

R.R. at 112a.

---

*Control Enforcement*, 782 A.2d 57 (Pa. Cmwlth. 2001). Accordingly, any such allegations of prejudice are meritless.

13

"Because a CLA is a *voluntary* agreement entered into by both the Board and the licensee, a CLA is a contract between the parties akin to a consent decree." *Derry St. Pub*, 111 A.3d at 1253. Whether written contract terms are ambiguous is strictly a legal determination. *Erie Ins. Co. v. Flood*, 649 A.2d 736 (Pa. Cmwlth. 1994). This Court has explained:

> A [contract] provision is ambiguous:
>
>> [I]f and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and *a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction*.
>
>> *Commonwealth State Highway* [*&*] *Bridge Auth*[.] *v. E.J. Albrecht Co*[.], . . . 430 A.2d 328, 330 ([Pa. Cmwlth.] 1981) (quoting 8 P.L.E. Contracts 146 (1971)) (emphasis added). '**We will not** [. . .] **distort the meaning of the language, or resort to a strained contrivance in order to find an ambiguity.**' *Madison Constr*[.] *Co. v. Harleysville Mut. Ins. Co.*, . . . 735 A.2d [100, ] 106 [(Pa. 1999)]. '**Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.**' *Standard Venetian Blind* [*Co. v. Am. Empire Ins. Co.*], . . . 469 A.2d [563,] 566 [(Pa. 1983)].

*TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900, 909 (Pa. Cmwlth. 2004) (bold emphasis added), *aff'd* 890 A.2d 1045 (Pa. 2005). "The failure of [a party to a contract] to include a contingency limiting the application of [a] term . . . renders the term silent, **not ambiguous**." *Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1189 (Pa. Super. 2007) (emphasis added).

14

Licensee contends, and the trial court agreed, that when the CLA's paragraph 5(b) wanding provision is read in conjunction with the CLA's paragraph 5(d) security guard provision, there is ambiguity regarding when patrons must be wanded and who must wand them. However, we find no such ambiguity.

CLA paragraph 5(b)'s plain language requires that Licensee "shall use a metal detecting wand on **all** patrons . . . ." R.R. at 182a (emphasis added). The provision is not ambiguous; it is clear. The paragraph contains no language limiting the time for wanding, makes no reference to CLA paragraph 5(d),[13] and does not mention security personnel. The absence of a particular time period and the broad language contained in paragraph 5(b) is an unambiguous requirement that **every patron** entering the premises must be wanded **whenever** the individual enters. "We will not . . . distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr.*, 735 A.2d at 106. Accordingly, the trial court committed an error of law when it concluded that the CLA's paragraph 5(b) wanding provision was ambiguous.

Lastly, the Bureau argues it presented substantial evidence to the trial court to support the Count Two violations.[14] We agree. The trial court explained:

> While counsel for the [Bureau] suggested to me that the issue involved [Licensee's] alleged failure to use an electronic or magnetic wand for security purposes at certain hours, no evidence of that was offered before me. Indeed, the [Bureau] relied on the Administrative Record and offered nothing additional to me.
>
> In the record made at the [ALJ] hearing (received as an Exhibit)[,] the facts in support of the citation were minimal. They appear at pages 17 through 19 and simply establish

---

[13] Nor does CLA paragraph 5(d) reference CLA paragraph 5(b).

[14] "Substantial evidence is defined as 'relevant evidence upon which a reasonable mind could base a conclusion.'" *Weaver Hauling & Excavating, LLC v. Dep't of Labor & Indus.*, 132 A.3d 557 , 566 (Pa. Cmwlth. 2016) (quoting *Johnson v. Unemployment Comp. Bd. of Review,* 502 A.2d 738, 740 (Pa. Cmwlth. 1986)).

that the [Officer] was indeed in [Licensee's] premises for 30 to 45 minutes on the 4 days in question; she was not there after 9[:00] p.m. and she did [not] speak to the owner, [Hemby] or interact with him[;] she was there 'undercover[.']

Hemby testified that he had security guards at the bar between the hours of 9[:00] p.m. and 2[:00] a.m. and they were to wand all customers who entered. He testified, however, that for the hours prior to 9[:00] p.m. a wand need not be used and that other security measures were taken - like personal pat down or search (Admin. Record 25-27).

As noted above, the *de novo* trial was held before me on September 1, 2015. In addition to Counsel for the [Bureau], the investigator was with counsel but did not testify.

R.R. at 111a (italics added).

The record reflects that the Bureau relied on the parties' stipulation to the facts set forth in the Bureau's pre-hearing memo at the administrative hearing, and the ALJ's statement that the ALJ would take official notice of the facts as represented therein. The ALJ made findings describing the incidents involving Licensee's failure to wand that were presumably discussed in the Bureau's pre-hearing memo. However, because the pre-hearing memo was not made a part of the record, the trial court concluded there was no evidence thereof before it.

Notwithstanding, there is record evidence supporting Licensee's violations. Count Two of the Citation charged:

On January 28, February 4, 20, and March 13, 2013, you, by your servants, agents or employees, failed to adhere to the conditions of the agreement entered into with the Board placing additional restrictions upon the subject license, in violation of Section 404 of the Liquor Code, 47, P.S. § 4-404.

R.R. at 177a. Importantly, an exchange between counsel and the ALJ, including a representation made by Licensee's counsel, provides sufficient factual evidence to support the charge. Licensee's counsel stipulated and admitted that Licensee was not

16

challenging the Bureau's allegation that the Bureau's officers were not wanded when entering the licensed premises on January 28, February 4, 20, and March 13, 2013 -- the dates charged. Rather, he was arguing that wanding was not required. *See* R.R. at 130a-131a. "It is well settled . . . that an admission of an attorney during the course of a trial is binding upon his client." *Piper Aircraft Corp. v. Workmen's Comp. Appeal Bd. (Bibey)*, 485 A.2d 906, 908 (Pa. Cmwlth. 1985). Further, Hemby admitted to the trial court that, even before receiving the Citation, Licensee did not begin wanding patrons until 9:00 p.m. when its security guard was present. *See* R.R. at 57a. As previously discussed, the CLA required that **at all times**, **all patrons** entering the premises be wanded. Accordingly, these admissions alone were substantial evidence to support the Bureau's charge.

For all of the above reasons, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, Bureau of    :
Liquor Control Enforcement,         :
                     Appellant    :
                              :
            v.              :
                              :  No. 2706 C.D. 2015
Big D Restaurants, LLC         :

O R D E R

AND NOW, this 8th day of September, 2016, the Allegheny County Common Pleas Court's December 3, 2015 order is reversed.

_____
ANNE E. COVEY, Judge