# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph C. Bongivengo,    :
     Appellant  :
          :
    v.      :  No. 877 C.D. 2018
          :  Argued: February 11, 2019
City of New Castle Pension Plan :
Board and The City of New Castle :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE ROBERT SIMPSON, Judge
     HONORABLE P. KEVIN BROBSON, Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**     **FILED: March 25, 2019**


   Appellant Joseph C. Bongivengo (Bongivengo) appeals from an order of the Court of Common Pleas of Lawrence County (common pleas), dated May 29, 2018. The order denied Bongivengo's appeal from the City of New Castle Council's (City Council) determination that Bongivengo, a City of New Castle (City) firefighter, was not yet eligible for retirement benefits because he had not reached the required minimum years of age. For the reasons that follow, we will affirm common pleas' order.

   The City's firefighters are represented for collective bargaining purposes by the International Association of Firefighters, Local No. 160 of New Castle, Lawrence County, Pennsylvania (Union). As a result, over the years the City and the Union entered into a series of collective bargaining agreements (CBA(s)). The City hired Bongivengo as a firefighter on August 1, 1988. During that time, the

City and the Union operated under the terms of a CBA governing the years 1987 through 1990 (1987 CBA). Although the 1987 CBA did not expressly provide for retirement pension benefits, it contained a clause rendering null and void any provisions of the CBA that conflicted with the Third Class City Code.[1] (Reproduced Record (R.R.) at 63a.) The Code requires an ordinance establishing a firefighter's pension fund to mandate a minimum period of continuous service of *20* years and a minimum age (if prescribed) of *50.*[2]

In 1987, the City adopted an ordinance establishing retirement pension benefits for firefighters hired after January 1, 1988 (Pension Ordinance). The original terms of the Pension Ordinance required firefighters to attain the age of *60* and contribute *20* years of service in order to be eligible for retirement pension benefits. (R.R. at 83a.) In 1991, the City amended the Pension Ordinance (1991

---

[1] The General Assembly enacted what was then commonly referred to as the Third Class City Code through the Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101-39701, which the General Assembly repealed (and recodified) by the current version of the Third Class City Code, now codified at 11 Pa. C.S. §§ 10101-14702. This opinion refers to the statutes interchangeably as "the Code" or refers to the statutes as the "former Code" or "current Code," as appropriate.

[2] Section 14321(a) of the current Code, 11 Pa. C.S. § 14321(a), provides:

Ordinance.—With regard to continuous service and minimum age requirements, the ordinance establishing or regulations governing the firefighters pension fund shall prescribe as follows:

(1) A *minimum* period of continuous service of not less than 20 years.

(2) If a *minimum* age is prescribed, a minimum of 50 years of age.

(Emphasis added.) At the time of the 1987 CBA, Section 4321 of the former Code, *as amended*, 53 P.S. § 39321, provided for the same period of continuous service and minimum age. Thus, the provisions of the former and current Code pertaining to firefighters' pensions that are applicable to this matter were the same for purposes of this opinion throughout the relevant time period.

Amendment) to *reduce* the minimum age requirement for firefighters hired after January 1, 1988, from 60 to 55.[3] (R.R. at 87a.)

By letter dated January 20, 2017, Bongivengo notified the Chief Administrative Officer for the City's Fireman's Pension Plan (Plan CAO) of his intent to retire upon his 50th birthday, in September 2017. (R.R. at 2a.) With respect to retirement pension benefits, the CBA in effect for the years 2017 through 2019 (2017 CBA) provided, in relevant part:

> Employees hired as of or promoted to Firefighter after January 1, 1998, but before January 1, 1992, may retire after completing twenty (20) years of service as a Firefighter and attaining the age of fifty-five (55) years. . . . The monthly amount of the normal retirement benefit for those who retire on or after January 1, 1998 shall be equal to seventy-five percent (75%) of the participant's average compensation.

(R.R. at 208a-09a.) Moreover, beginning with the CBA covering the years 1998 through 2002 (1998 CBA), the City and the Union removed from their CBAs any express reference to the Code, particularly the null and void clause in the 1987 CBA. In its place, subsequent CBAs, including the 2017 CBA, provided: "Any provisions of this Agreement inconsistent with the applicable provisions of *the Optional Third Class City Charter Law*[4] or other applicable law are hereby deemed to be null and void." (R.R. at 197a (emphasis added).)

In his letter, Bongivengo acknowledged that the 1991 Amendment to the Pension Ordinance sets a minimum retirement age of 55. Bongivengo

---

[3] The 1991 Amendment provides: "Each member shall be entitled to receive a pension benefit provided he/she has completed at least *twenty (20) years of continuous service with the employer and has attained the age of 55*." City of New Castle, Pa. Ordinance 7060 (Dec. 26, 1991) (emphasis added).

[4] Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §§ 41101-45000 (Charter Law).

3

contended, however, that the 1991 Amendment was in conflict with the Code, which allowed him to retire at the age of 50 with 20 years of service. As between the two, Bongivengo contended that the Code prevails. He asked the City to confirm his eligibility to retire at the age of 50 pursuant to the Code. Bongivengo did not reference any CBA provision in his letter.

The Plan CAO responded by letter dated February 14, 2017. (R.R. at 3a-4a.) She informed Bongivengo that any request for retirement benefits must comply with the terms of the 2017 CBA and the Pension Ordinance, as amended, neither of which allows for a retirement pension at the age of 50. Moreover, she gave three reasons why Bongivengo's reliance on the Code was misplaced. First, she contended that Bongivengo is bound by the terms of the 2017 CBA, even those that may be illegal. Second, the pension provisions of the 2017 CBA are not illegal, because the City, operating under an optional charter, is not subject to the Code. Finally, she contended that the Municipal Pension Plan Funding Standard and Recovery Act (Act 205)[5] authorized the pension plan eligibility terms. Nonetheless, she notified Bongivengo that she would forward his inquiry to the Plan Administrator for a determination.

The Pension Board thereafter denied Bongivengo's request for retirement pension benefits, referring Bongivengo to the earlier explanation provided by the Plan CAO. (*Id*. at 6a.) Bongivengo appealed the Pension Board's decision to City Council, which, after a public hearing on the matter, denied Bongivengo's appeal and adopted the proposed findings of fact and conclusions of law as submitted by the Pension Board. (*Id*. at 18a.) The following adopted findings

---

[5] Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§ 895.101-.1131.

4

of fact—gleaned from the public hearing—supply a helpful factual background for the purposes of this appeal:

> 2. The City Firemen pension ordinances since December 26, 1991 and the collective bargaining agreements since 1992 have provided that a firefighter hired in 1988 must reach 20 years of service and age 55 in order to retire under [n]ormal [r]etirement.
>
> 3. The current collective bargaining agreement (for the period [January 1, 2017, to December 31, 2019),] as well as the predecessor arbitration award (for the period [January 1, 2014, to December 31, 2016,]) provide that a City Firefighter hired in 1988 must reach 20 years of service and age 55 to retire under [n]ormal [r]etirement.
>
> 4. The pension request of [Bongivengo] has been handled pursuant to Plan Appeal Procedure including [a] Local Agency [Law][6] hearing before [City] Council on August 22, 2017.
>
> 5. No request to change the normal retirement for those firefighters hired in 1988 was made an issue in dispute in the bargaining leading up to the [January 1, 2017, to December 31, 2019] collective bargaining agreement. Also, no request to change the normal retirement for those officers hired in 1988 was made an issue in dispute leading up to the arbitration award for the period [January 1, 2014, to December 31, 2016].
>
> . . . .
>
> 8. The Auditor General Compliance Audit Report for the period January 1, 2014[,] to December 31, 2015[,] issued August 2016 for this Plan states that the normal retirement requirement is 20 years of service and age 55 for a fireman hired in 1988.

---

[6] 2 Pa. C.S. §§ 551-555, 751-754.

9. The Auditor General is tasked with completing audits of local government pension plans which includes review of benefit structures for legality.

10. There is no finding from the Auditor General's Office in the 2014-2015 Compliance Audit Report that 20 years of service and age 55 is an illegal benefit.

11. The 2015 actuarial valuation (the most recent valuation available at the hearing date) lists normal retirement for firemen hired in 1988 as 20 years of service and age 55.

12. The Fire Plan funding level is just under 60%. The 2017 minimum municipal obligation [] to fund the Plan is over $1,000,000 and state aid relative to this Plan for 2016 was about $200,000 thus resulting in a substantial shortfall and substantial City contribution to this Plan. Any additional pension benefits would place an additional strain on the City['s] financial position.

13. The Pennsylvania Auditor General has issued a memorandum which provides that an Optional Charter City is not bound by the Third Class City [Code] pension provisions which means the City does not have to follow the normal retirement provisions for firefighters as described in the . . . Code.

(R.R. at 12a-13a (internal citations omitted).)

Bongivengo appealed the City Council's determination to common pleas. (*Id.* at 25a.) Common pleas denied Bongivengo's appeal, concluding, *inter alia*, that Bongivengo is bound by the terms of the Pension Ordinance, as amended, which requires a minimum retirement age of 55 and a minimum of 20 years of service. (*Id.* at 51a.) Bongivengo now appeals to this Court.

6

On appeal,[7] Bongivengo contends that the 1991 Amendment to the Pension Ordinance is not enforceable because City Council passed and implemented the amendment without first negotiating its contents with the Union pursuant to the Police and Fireman Collective Bargaining Act, commonly referred to as Act 111.[8] Because the City did not engage in collective bargaining before implementing the updated pension eligibility requirements, the City also violated Section 607(e) of Act 205, 53 P.S. § 895.607(e).[9] Next, Bongivengo contends that the Code contains the controlling language concerning the minimum age and years of service requirements for pension eligibility. In support, Bongivengo directs the Court to the null and void provision of the 2017 CBA, which declares all sections in conflict with the "[Charter Law] or *other applicable law*" to be null and void. (R.R. at 197a (emphasis added).) Bongivengo maintains that the phrase "other applicable law" includes the Code. Accordingly, the Code, which allows for retirement upon

---

[7] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, and whether the procedure before the local agency was contrary to statute." *Perrez v. Fox Chapel Borough*, 143 A.3d 520, 525 n.5 (Pa. Cmwlth. 2016).

[8] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-.10.

[9] Section 607(e) of Act 205 provides:

Establishment of a revised benefit plan for newly hired municipal employees.— The municipality may establish a revised benefit plan of the pension plan applicable to any employee first hired on or after the effective date of the instrument establishing the revised benefit plan. At the option of the municipality, the revised benefit plan may be extended to include an employee first hired prior to the effective date of the instrument establishing the revised benefit who elects the coverage. . . . *A revised benefit plan for newly hired municipal employees shall be developed with consultation with representatives of the collective bargaining unit applicable to the affected type of municipal employee, if any, and shall be within the scope of collective bargaining pursuant to the applicable law subsequent to the establishment of the revised benefit plan.*

(Emphasis added.)

reaching the minimum age of 50, controls over any conflicting provision in the 2017 CBA.

In response, the City and the Pension Plan (collectively, Appellees) argue that common pleas' order should be affirmed, because Appellees are bound by the Charter Law and not the Code. Further, Appellees argue that Bongivengo is bound by the terms of the 2017 CBA, negotiated on his behalf by the Union. Lastly, Appellees contend that Bongivengo seeks an increase in benefits in contravention of Act 205.

The sole issue in this matter is whether Bongivengo is entitled to a retirement pension upon reaching the age of 50, as set forth in the Code, or age 55, as set forth in the Pension Ordinance, as amended, and the 2017 CBA. In *Norcini v. City of Coatesville*, 915 A.2d 1243 (Pa. Cmwlth. 2007), this Court affirmed the order of a common pleas court that refused to compel the City of Coatesville to provide a certain percentage of annual salary for disability pension benefit pursuant to the Code, where the CBA in effect provided contrary (but ultimately controlling) language concerning disability pension benefits. In doing so, this Court stated:

> [T]he police pension plan at issue was in place, and outlined in the CBA, at all times during Norcini's employment. . . . Moreover, the CBA was voluntarily entered into by the parties. Norcini was bound by and benefited from the provisions of the CBA throughout the course of his employment, and was equally bound by the provisions of the CBA at the time of his retirement, including any shortcomings and limitations.

*Norcini*, 915 A.2d at 1247.

Here, common pleas gave primacy to the terms of the 1991 Amendment to the Pension Ordinance over any conflict with the CBAs, particularly the 2017 CBA. With respect to Bongivengo's retirement pension eligibility,

8

however, there is no conflict. Both the 1991 Amendment and the 2017 CBA provide that Bongivengo is only eligible to receive a retirement pension after accruing 20 years of service and attaining the age of 55. *Norcini* supports the City's position that Bongivengo is bound by the terms of the 2017 CBA. We see no merit to Bongivengo's contention that because the City passed the 1991 Amendment *before* the terms of the ordinance were enshrined in a CBA, the pension benefit provision of the 2017 CBA is legally infirm.[10] Regardless of which came first, the Union and the City agreed that, with respect to firefighters hired at or around the time the City hired Bongivengo, the minimum age for retirement benefit eligibility would be 55.[11] Just as we stated in *Norcini*, Bongivengo is "bound by the total result negotiated by the union on [his behalf] and cannot selectively choose or reject aspects of the negotiated agreement." *Norcini*, 915 A.2d at 1245-46.[12]

---

[10] We acknowledge the irony here that by challenging the legality of the 1991 Amendment, Bongivengo is attacking an amending ordinance that provided for a favorable change in retirement benefits for him and other City firefighters by reducing the minimum age for eligibility from 60, as set forth under the original terms of the Pension Ordinance, to 55.

[11] The first time an express pension provision appeared in a CBA between the Union and the City was the CBA covering years 1992 through 1994 (1992 CBA), the period immediately following passage of the 1991 Amendment to the Pension Ordinance. (R.R. at 128a.) With respect to firefighters, like Bongivengo, hired after January 1, 1988, but before December 31, 1991, the 1992 CBA expressly required a minimum age of 55 and 20 years of service for retirement pension eligibility, consistent with the terms of the 1991 Amendment to the Pension Ordinance. Every CBA negotiated thereafter included the same eligibility terms for firefighters hired after January 1, 1988, but before December 31, 1991. Bongivengo, therefore, has known since adoption of the 1992 CBA that the Union and the City agreed to these eligibility terms.

[12] We also note that beginning with the 1998 CBA, the Union and the City agreed to increase the monthly retirement benefit from 50% of the retiring firefighter's final monthly average salary, as set forth in the Pension Ordinance, to 75% of the retiring firefighter's average compensation. (R.R. at 185a.) It is clear, then, that over the years the Union has successfully negotiated with the City for increased retirement benefits for its members, including Bongivengo.

This ruling also disposes of Bongivengo's argument that the City violated Section 607(e) of Act 205 because it did not engage in collective bargaining before it implemented the new age and years of service requirements. As noted above, the City and the Union did collectively bargain for the age and years of service requirement, as first reflected in the 1992 CBA and subsequently in every CBA thereafter.

Bongivengo's final argument is that the null and void clause in the 2017 CBA should be interpreted so that "other applicable law" refers to the Code. With respect to contract interpretation in Pennsylvania, our Supreme Court, in *Lesko v. Frankford Hospital-Bucks County*, 15 A.3d 337 (Pa. 2011), opined:

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. . . . Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended.

*Lesko*, 15 A.3d at 342 (emphasis in original). Contractual terms are not ambiguous if "the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *State Highway & Bridge Auth., Dep't of Transp. v. E.J. Albrecht Co.*, 430 A.2d 328, 330 (Pa. Cmwlth. 1981).

Here, with respect to retirement pension eligibility, the 2017 CBA clearly and expressly provides for a minimum age of 55 and 20 years of service. Moreover, we refuse Bongivengo's invitation to interpret the catch-all phrase "other applicable law" in the 2017 CBA's null and void clause as encompassing a particular law—*i.e.*, the Code—that the City and the Union agreed to remove from the clause starting with the 1998 CBA and continuing in every CBA thereafter. To us, the

10

substitution of the Charter Law for the reference to the Code in the null and void clause expresses the clear intent and acknowledgement by the City and the Union that the former controlled and not the latter. Because the Charter Law does not provide for a minimum age and years of service requirement, there is no conflict between the 2017 CBA's eligibility provisions and the Charter Law.

For the reasons set forth above, we find no error with common pleas' decision to affirm the City Council's pension eligibility determination in this matter. We, therefore, will affirm common pleas' order, which denied Bongivengo's appeal from City Council's determination.

P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph C. Bongivengo,         :
                  Appellant   :
                          :
          v.             :    No. 877 C.D. 2018
                          :
City of New Castle Pension Plan  :
Board and The City of New Castle  :

# **O R D E R**

AND NOW, this 25th day of March, 2019, the order of the Court of Common Pleas of Lawrence County is hereby AFFIRMED.

P. KEVIN BROBSON, Judge